IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-851-GPG-SBP

ELIZA LUCERO

Plaintiff,

v.

CITY OF AURORA;

ANDREW SILBERMAN, Aurora Police Department Detective, in his individual capacity;

Defendants.

**PLAINTIFF'S RESPONSE TO DEFENDANT SILBERMAN'S MOTION TO DISMISS, ECF 31**

Plaintiff Eliza Lucero, by and through her attorneys, Adam Frank and Cameron Bedard of the Frank Law Office LLC, respectfully submits her response to ECF No. 31. Ms. Lucero requests that this Court deny Defendant Silberman's Motion to Dismiss in its entirety.

## INTRODUCTION

Defendant Silberman submitted an affidavit seeking the arrest and prosecution of Ms. Lucero for, in part, attempting to "kidnap" 18 police officers inside Aurora's District 1 police station. The way Ms. Lucero allegedly committed her "crimes" was by helping lead a peaceful protest outside the station. As is clear from Defendant Silberman's affidavit, the information Defendant Silberman gathered about Ms. Lucero consisted largely of her engaging in protected speech. The information he gathered did not evidence probable cause that Ms. Lucero had committed any crime.

Knowing this, in an attempt to increase his chances of securing a warrant for Ms. Lucero's arrest, Defendant Silberman intentionally and knowingly omitted multiple material exculpatory facts from his affidavit seeking an arrest warrant. He intentionally omitted the fact that throughout the protest, a door to the police station was unlocked and unblocked such that at any time, any officer inside could have simply walked out. He intentionally omitted the fact that the reason the officers stayed inside District 1 was not that they were "imprisoned" there but was because they had been ordered to stay there by the Chief of Police. He intentionally omitted the fact that the officers inside had an armory filled with lethal and non-lethal weaponry to use if they had wished to exit. Only by intentionally omitting these exculpatory material facts from his affidavit did Defendant Silberman secure Ms. Lucero's arrest and prosecution. His choice to do this evidenced malice towards her.

By pleading the above facts and others, Ms. Lucero has properly pleaded causes of action against Defendant Silberman for malicious prosecution under C.R.S. § 13-21-131 and 42 U.S.C. § 1983. Since 1986 it has been clearly established that it is unconstitutional for a police officer to

1

intentionally omit exculpatory facts from an affidavit seeking a warrant. *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004). Defendant Silberman is therefore not entitled to qualified immunity on Ms. Lucero's 42 U.S.C. § 1983 claim. Defendant Silberman's Motion to Dismiss should be denied.

## FACTUAL ALLEGATIONS SUPPORTING LIABILITY

On July 3, 2020, Ms. Lucero helped lead a protest outside APD's District 1 police station demanding accountability for the officers who had murdered Elijah McClain yet were still patrolling the streets as APD officers. ECF 23 ¶¶ 40-45. Ms. Lucero and her fellow protest leaders worked hard to keep the protest peaceful, discouraging the protestors from building barricades or blocking doors. ECF 23 ¶¶ 46-50, 54. In response to prior negative media coverage of Aurora's violent responses to protests, Aurora's Chief of Police ordered the officers inside District 1 to remain there and not to attempt to disperse the protestors. ECF 23 ¶¶ 51-52. As a result of Ms. Lucero and her fellow protest leaders' exhortations that the protest be peaceful as well as the Chief's decision to order the APD officers present to remain inside, the protest proceeded peacefully. ECF 23 ¶ 53. At all times during the protest, a door for exiting District 1 was unblocked and unlocked such that any officer inside could have exited the building had they so chosen. ECF 23 ¶¶ 53, 55.

The July 3, 2020 protest and others organized by Ms. Lucero and her fellow protest leaders proved successful. In response to the protests and the massive public support they triggered, the Aurora City Council commissioned an investigation into Mr. McClain's death and APD's coverup of its officers' murderous misconduct. ECF 23 ¶¶ 56-58. APD responded to the City Council's investigation by forming a task force to target the protest leaders who had dared shine a light on APD's misconduct. ECF 23 ¶¶ 63-66. Defendant Silberman volunteered for the task force and was assigned to investigate the leaders of the July 3, 2020 protest. ECF ¶¶ 64-68.

Despite dedicating countless hours to this investigation, Defendant Silberman and the officers

2

he supervised did not uncover criminal activity by Ms. Lucero. ECF 23 ¶¶ 69-75. Defendant Silberman nonetheless wrote a 33-page affidavit detailing the supposed evidence against her. ECF 31-4. At the end of his affidavit, he summarized the information he had learned. ECF 23 ¶ 73; ECF 31-4 at 28-32. As the summary made clear, Ms. Lucero's conduct was not criminal. ECF 23 ¶¶ 73, 107.

During his investigation, Defendant Silberman learned that throughout the protest, a door to District 1 was unlocked and unblocked such that the officers inside could have exited at any time. ECF 23 ¶ 76-78. He also learned that the reason the officers stayed inside was that the Chief of Police ordered them to stay there. ECF 23 ¶ 79-80. Finally, he learned that, had the officers inside District 1 been ordered to or otherwise sought to exit the building, they had a large amount of both lethal and non-lethal weaponry as well as body armor to assist them in doing so. ECF 23 ¶ 82. At that point, Defendant Silberman knew he had not uncovered evidence of criminal activity by Ms. Lucero. However, acting out of malice, he wrote an affidavit seeking an arrest warrant for Ms. Lucero in which he intentionally omitted these exculpatory facts. ECF 23 ¶ 83-91.

Defendant Silberman's malicious retaliation against Ms. Lucero for helping lead the July 3, 2020 protest worked. Based on his omission-ridden affidavit, a judge issued a warrant for Ms. Lucero's arrest. ECF 23 ¶ 92. Armed with this ill-gotten warrant, Defendant Silberman further demonstrated his malice by having it served in a way that would inflict maximum pain. ECF 23 ¶¶ 94-103. He provided even more evidence of malice by perjuring himself at the preliminary hearing in Ms. Lucero's criminal case, lying about the existence of an interview he had conducted just four days earlier in which he learned additional material exculpatory information about her. ECF 23 ¶¶ 109-121.

Fortunately for Ms. Lucero, prior to the conclusion of her preliminary hearing she discovered that exculpatory evidence and presented it to the Court. ECF 23 ¶¶ 122-24. The judge found that there was no probable cause for the one charge that was eligible for a preliminary hearing, and further

3

opined that there was not probable cause for any charge against Ms. Lucero and the warrant for her arrest never should have been issued. ECF 23 ¶¶ 125-26. Shortly thereafter, the prosecution dropped the remaining charges against Ms. Lucero. ECF 23 ¶¶ 127.

## STANDARD OF REVIEW

There is a strong presumption against the dismissal of claims under Rule 12(b)(6). *Cottrell, Ltd. v. Biotrol Intern., Inc.*, 191 F.3d 1248, 1251 (10th Cir. 1999). Evaluating a Rule 12(b)(6) motion, a court must accept as true "all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." *Kerber v. Qwest Group Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011) (internal citation omitted). Generally, a complaint will survive a Rule 12(b)(6) motion if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Plausible" does not mean "likely to be true," but is, instead, a nudge beyond "conceivable." *See Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

## ARGUMENT

**I. Ms. Lucero has properly pleaded her causes of action against Defendant Silberman alleging malicious prosecution under C.R.S. § 13-21-131 and 42 U.S.C. § 1983.**

Under Colorado law, a plaintiff making a claim of malicious prosecution must plead that: "(1) the defendant contributed to bringing a prior action against the plaintiff; (2) the prior action ended in favor of the plaintiff; (3) no probable cause; (4) malice; and (5) damages." *Hewitt v. Rice*, 154 P.3d 408 (Colo. 2007). Under 42 U.S.C. § 1983, the elements of a malicious prosecution claim are functionally identical: a plaintiff must plead that "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with

4

malice; and (5) the plaintiff sustained damages." *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008). Ms. Lucero's operative complaint properly pleads facts supporting each element.

Defendant Silberman does not contest that Ms. Lucero has properly pleaded elements 1, 2, and 5. As the author of the affidavit that set Ms. Lucero's criminal case in motion, Defendant Silberman contributed to bringing the criminal case against Ms. Lucero, causing her confinement and prosecution. ECF 23 ¶¶ 61-103. The criminal case ended in Ms. Lucero's favor. ECF 23 ¶¶ 125-27; *Thompson v. Clark*, 142 S. Ct. 1332, 1335 (2022). Ms. Lucero suffered damages based on her arrest and prosecution. ECF 23 ¶¶ 93-103, 108. Defendant Silberman disputes only elements 3 and 4. The Court should deny Defendant Silberman's Motion to Dismiss because Ms. Lucero has properly pleaded both element 3, a lack of probable cause and element 4, malice.

### A. No probable cause.

Ms. Lucero's operative complaint pleads the absence of probable cause two ways. First, she has pleaded that, even examining Defendant Silberman's affidavit as written, it did not establish probable cause that Ms. Lucero had committed any crime. ECF 23 ¶¶ 9, 73-74, 91, 107, 126, 149, 167-68. Second, even if the Court finds that the affidavit as written established probable cause, had Defendant Silberman not intentionally omitted the material facts he knew cited in ¶¶ 76-91 of Ms. Lucero's operative complaint, their inclusion would have vitiated probable cause. *People v. Dailey*, 639 P.2d 1068, 1075 (Colo. 1982) (citing *Franks v. Delaware*, 438 U.S. 154 (1978)).[1]

### 1. Defendant Silberman's affidavit did not establish probable cause.

Ms. Lucero has pleaded that Defendant Silberman's affidavit did not establish probable cause

---

[1] Defendant Silberman's asserts in ECF 31, at 4-9, that Ms. Lucero's claim that there was not probable cause for her arrest is purely a *Franks* claim. He further asserts that Ms. Lucero has brought a stand-alone *Franks* claim. *Id.* Both assertions are incorrect. *See* ECF 23, at 27.

5

to believe that she committed a crime. ECF 23 ¶¶ 9, 73-74, 91, 107, 126, 149, 167-68. Ms. Lucero's actions that Defendant Silberman uncovered were legal. ECF 23 ¶¶ 73-74. Ms. Lucero's operative complaint thus sufficiently pleads this element of her cause of action.

The Court should disregard ECF 31-4, which purports to be the affidavit Defendant Silberman used to secure the warrant for Ms. Lucero's arrest. As is apparent from its last page, the version of Defendant Silberman's affidavit that he filed is not the one that caused Ms. Lucero's arrest as it is not signed by a judge. ECF 31-4 at 33. While it can be proper for the Court to consider a document outside the complaint if it is "central to the plaintiff's claim," this only applies where "the parties do not dispute the documents' authenticity." *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). Here, ECF 31-4 is not the document referenced in the operative complaint that caused Ms. Lucero's arrest.

Should the Court consider Detective Silberman's affidavit in addition to the facts alleged in Ms. Lucero's complaint, the facts still do not establish probable cause. The entirety of Ms. Lucero's actions cited in the affidavit are that: (1) at 7:10pm, Ms. Lucero marched at the front of a group of protestors and led protest chants outside of the police station; (2) at 8:04pm, she led additional protest chants outside the police station; (3) at 1:49am, she changed clothes; (4) at 3:00am, she left the protest; and (5) during the protest chants referenced in #3, she was alleged by another officer to have said words to the effect that nobody would be getting in or out. ECF 31-4 at 28-32; ECF 23 ¶ 73. No doors were barricaded or tied shut in response to Ms. Lucero's alleged statement, and no violence ensued. ECF 31-4 (first door tied shut at 12:58am; no violence after Ms. Lucero's statements).

Ms. Lucero's statements described in the affidavit were protected by the First Amendment and article II, section 10 of the Colorado Constitution such that they cannot be the source of criminal liability. Under the First Amendment, "An advocate must be free to stimulate his audience with spontaneous and emotional appeals for unity and action in a common cause. When such appeals do

6

not incite lawless action, they must be regarded as protected speech. To rule otherwise would ignore the 'profound national commitment' that 'debate on public issues should be uninhibited, robust, and wide-open." *NAACP v. Claiborne Hardware*, 458 U.S. 886, 928 (1982) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)). "[S]peech on public issues occupies the 'highest rung of the hierarchy of First Amendment values,' and is entitled to special protection." *Connick v. Myers*, 461 U.S. 138, 145 (1983) (quoting *Claiborne Hardware*, 458 U.S. at 913).

Reasoning from these holdings, the Colorado Supreme Court holds that under the First Amendment and article II, section 10 of the Colorado Constitution, "coercive demands and threats . . . [made] in a more or less in a public setting designed to inform and perhaps involve others in the issues posed by the demand . . . will involve protected communication." *Whimbush v. People*, 869 P.2d 1245, 1248 (Colo. 1994). Further, even "[t]hreats of violence that are not true threats, but which are 'political hyperbole,' are protected speech." *People v. Hickman*, 988 P.2d 628, 639 (Colo. 1999); *see also United States v. Hutson*, 843 F.2d 1232, 1235 (9th Cir. 1988) ("[In] speech relating to social or political conflict, . . . threats to engage in behavior that may be unlawful may nevertheless be [a protected] part of the marketplace of ideas").

Defendant Silberman's affidavit sought Ms. Lucero's arrest based on the content of her speech. Ms. Lucero's speech in question was protected by the First Amendment and article II, section 10 of the Colorado Constitution such that it may not be made criminal. The facts Defendant Silberman knew about Ms. Lucero that were not protected speech did not establish probable cause to believe she had committed any crime. No reasonable officer could have believed otherwise.

Ms. Lucero's alleged acts do not establish probable cause that she committed a crime. Addressing the specific crimes alleged by Defendant Silberman in his affidavit, first, his affidavit did not establish probable cause that Ms. Lucero committed Inciting a Riot under C.R.S. § 18-9-102(a) or

7

(b), or Engaging in a Riot under C.R.S. § 18-9-104. Even putting aside the First Amendment issues, under Colorado law, the word "'Riot' means a public disturbance involving an assemblage of three or more persons which <u>by tumultuous and violent conduct</u> creates grave danger of damage or injury to property or persons or substantially obstructs the performance of any governmental function." C.R.S. § 18-9-101(2) (emphasis added). Defendant Silberman's affidavit contained no allegations that Ms. Lucero engaged in "tumultuous and violent conduct." ECF 31-4; ECF 23 ¶ 73. She therefore did not engage in a riot. C.R.S. § 18-9-104. It also did not contain factual allegations that when Ms. Lucero led protest chants there was an ongoing or impending "riot" as defined in Colorado law. ECF 31-4; ECF 23 ¶ 73. She therefore did not "(a) Incite[] or urge[] a group of five or more persons to engage in a current or impending riot; or (b) Give[] commands, instructions, or signals to a group of five or more persons in furtherance of a riot." C.R.S. §§ 18-9-102(a),(b); 18-9-101(2).

Second, Defendant Silberman's affidavit did not establish probable cause that Ms. Lucero committed Obstructing Government Operations under C.R.S. § 18-8-102. A person violates that statute if she "intentionally obstructs, impairs, or hinders the performance of a governmental function by a public servant, by using or threatening to use violence, force, or physical interference or obstacle." Defendant Silberman's affidavit contains no allegation that Ms. Lucero engaged in any conduct or speech unprotected by the First Amendment or article II, section 10 that used or threatened to use violence, force, physical interference, or an obstacle to intentionally obstruct a governmental function.

Finally, Defendant Silberman's affidavit did not establish probable cause that Ms. Lucero committed Attempted First Degree Kidnapping under C.R.S. §§ 18-3-301(1)(c) and 18-2-101. To violate that law, a person must take a "substantial step" towards "imprison[ing] or forcibly secret[ing] any person" "with the intent thereby to force the victim or any other person to make any concession or give up anything of value in order to secure a release of a person under the offender's actual or

8

apparent control." C.R.S. §§ 18-3-301(1)(c), 18-2-101. There is no plausible argument that Ms. Lucero's actions described in Defendant Silberman's affidavit violated this statute, and her speech was protected and therefore not susceptible to criminalization. Further, even if the First Amendment were no impediment, Ms. Lucero's words and actions described in the affidavit did not violate the statute. There is no allegation Ms. Lucero used force, so she did not take a substantial step towards "forcibly secreting" anyone. Concerning whether she attempted to "imprison" anyone, "imprison" means "put or keep in prison or a place like a prison." Imprison, Oxford Languages Dictionary, https://www.google.com/search?q=define+imprison.[2] Defendant Silberman's affidavit did not allege Ms. Lucero took a substantial step towards putting any officer in a place like prison. It also contained no plausible allegation that she had "actual or apparent control" over the officers inside District 1.

### 2. The facts Defendant Silberman intentionally omitted from his affidavit vitiated any hypothetical probable cause.

Ms. Lucero may also plead the absence of probable cause through *Franks* and its progeny. *Taylor v. Meacham*, 82 F.3d 1556, 1561-62 (10th Cir. 1996); *Sanchez v. Hartley*, 299 F. Supp. 3d 1166, 1194-96 (D. Colo. 2017). To do so, she must plead that Defendant Silberman omitted information from his affidavit that, if included, would have vitiated probable cause, and that he did so recklessly, knowingly, or intentionally. *Puller v. Baca*, 781 F.3d 1190, 1197 (10th Cir. 2015). She has done this.

The addition to the affidavit of the information Defendant Silberman intentionally excluded vitiates any hypothetical probable cause to believe that Ms. Lucero committed attempted kidnapping of the police officers who were inside District 1. Defendant Silberman omitted the following facts: (1)

---

[2] "In the absence of . . . a definition, we construe a statutory term in accordance with its ordinary or natural meaning." *Cowen v. People*, 2018 CO 96, ¶ 14. To do this, Colorado courts "first look to their dictionary meanings." *Welch v. Colo. State Plumbing Bd.*, 2020 COA 130, ¶ 22.

Ms. Lucero and the protestors <u>left the door open</u>. To exit District 1, all any officer had to do was walk out of an unblocked and unlocked door. ECF 23 ¶¶ 76-91. (2) The reason the officers stayed inside was because they were ordered to, not because of any actions by the protestors. *Id.* (3) Had the officers chosen to leave, they had a full array of lethal and non-lethal weaponry as well as body armor available to them. *Id.* With this information included, there is no possible argument that probable cause existed to believe Ms. Lucero attempted to kidnap the officers inside District 1 by helping to lead a protest outside. The idea that a person committed an attempted kidnapping of a group of police officers inside a building when the person left an exit door unlocked and unblocked, the officers inside had loads of guns, and the officers inside only stayed there because their Chief ordered them to, is ludicrous.

Defendant Silberman omitted these facts knowingly and intentionally to make it appear there was probable cause for Ms. Lucero's arrest when there was not. *Id.* Under *Franks* and its progeny, Ms. Lucero has properly pleaded a lack of probable cause. Further, because Defendant Silberman intentionally and knowingly excluded material exculpatory evidence from his affidavit, the magistrate's issuance of the warrant based on his affidavit provides him no defense. *Stewart v. Donges*, 915 F.2d 572, 582 n.13 (10th Cir. 1990) (explaining how to evaluate probable cause when affidavit is challenged based on material omissions; no deference given to magistrate's original ruling).

### 3. Ms. Lucero's malicious prosecution claims may proceed even if the Court finds there was probable cause for her arrest.

While a malicious prosecution claim ordinarily requires a lack of probable cause, Ms. Lucero's case meets the narrow exception the Supreme Court recognized in *Nieves v. Bartlett*, 139 S. Ct. 1715, 1727 (2019). In the context of a constitutional claim that generally requires a lack of probable cause, the Supreme Court holds: "a narrow qualification is warranted for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so. In such cases, an

unyielding requirement to show the absence of probable cause could pose a risk that some police officers may exploit the arrest power as a means of suppressing speech." *Id.* Because of this, "the no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.* Ms. Lucero's case meets this narrow exception. As Ms. Lucero has pleaded, regarding the charges Defendant Silberman sought against her other than the attempted kidnapping charge, the only difference between Ms. Lucero and the thousand other protestors present was that Ms. Lucero helped lead the protest. ECF 23 ¶¶ 104-06. Even if the Court finds there was probable cause to arrest Ms. Lucero on a minor charge, because the same probable cause existed to arrest thousands of others but out of malice Defendant Silberman pursued only Ms. Lucero and her fellow protest leaders, her malicious prosecution causes of action may nevertheless proceed.

### B. Malice.

Ms. Lucero has properly pleaded the malice element of her malicious prosecution claims. Under both C.R.S. § 13-21-131 and 42 U.S.C. § 1983, "Malice may be inferred from a lack of probable cause." *Sanchetta v. Apollo Stereo Music Co.*, 616 P.2d 182, 183 (Colo. App. 1980); *Chavez-Torres v. City of Greeley*, No. 14-cv-01187-RBJ, 2015 U.S. Dist. LEXIS 52128, at *13 (D. Colo. Apr. 21, 2015); *Cronick v. City of Colorado Springs*, No. 20-cv-00457-CMA-KMT, 2022 U.S. Dist. LEXIS 7007, at *18 (D. Colo. Jan. 13, 2022). At the pleadings stage, by alleging a lack of probable cause Ms. Lucero has sufficiently alleged malice. *Chavez-Torres*, 2015 U.S. Dist. LEXIS 52128, at *13 ("Because the Court is satisfied that plaintiff's allegations are sufficient to find a lack of probable cause, the plaintiff has pled sufficient

facts to plausibly find that [Defendant] was motivated by malice.").[3]

Additionally, Ms. Lucero has alleged numerous facts beyond a lack of probable cause that demonstrate Defendant Silberman's malice. He intentionally left the exculpatory facts detailed above out of his affidavit to make it appear there was probable cause for Ms. Lucero's arrest when there was not. ECF 23 ¶¶ 76-91. Armed with an ill-gotten warrant, he worked to have it served in a way that would inflict maximum injury on Ms. Lucero, forcing her to be incarcerated for over a week without seeing a judge in a jail that was a COVID hotspot during the early days of COVID when there were no vaccines or treatments and people in Denver's jails were dying daily. ECF 23 ¶¶ 93-103. Then, when he saw his malicious prosecution faltering, he perjured himself at Ms. Lucero's preliminary hearing, lying about the existence of further exculpatory information in a failed attempt to preserve the prosecution. ECF 23 ¶¶ 109-121. Any of these facts alone would be sufficient to allege malice.

Because Ms. Lucero has properly pleaded malice separate from her allegations about Defendant Silberman's preliminary hearing testimony, his argument concerning possible immunity for preliminary hearing testimony is immaterial. It is also incorrect. Under binding Tenth Circuit precedent, "in the context of a 1983 claim for malicious prosecution, a complaining witness is not absolutely immune for testimony given in a pretrial setting if that testimony is relevant to the manner in which the complaining witness initiated or perpetuated the prosecution." *Anthony v. Baker*, 955 F.2d 1395, 1401 (10th Cir. 1992). Under *Anthony*, Defendant Silberman may be held liable for his preliminary hearing testimony because he was the complaining witness against Ms. Lucero, testifying

---

[3] Defendant Silberman's citation to *Stonecipher v. Valles*, 759 F.3d 1134, 1146 (10th Cir. 2014), for the proposition that malice may only be inferred from a lack of arguable probable cause is misleading. That statement is only accurate in the context in which the Tenth Circuit made it: while evaluating whether a defendant officer was entitled to qualified immunity on a claim that the officer recklessly excluded exculpatory information from an affidavit seeking an arrest warrant. It is inapplicable to the question of whether Ms. Lucero has properly pleaded the elements of malicious prosecution. Further, as argued at greater length in Part II where Ms. Lucero addresses Defendant Silberman's assertion of qualified immunity, it is also inapplicable when the defendant officer's omissions were made knowingly or intentionally, not just recklessly.

12

about how he initiated and perpetuated her prosecution. *See* ECF 23 ¶¶ 65, 66-75, 83-92, 107-121. While this holding has been called into question by dicta in *Rehberg v. Paulk*, 566 U.S. 356, 375 (2012), the *Rehberg* dicta was based on factual inaccuracies, is not binding, and should not be followed.[4]

## II.   Defendant Silberman is not entitled to qualified immunity.[5]

To overcome an assertion of qualified immunity in a motion to dismiss, a plaintiff must show that, assuming the allegations in the operative complaint are true, the Defendant violated the Plaintiff's constitutional rights and that the right was clearly established at the time of the violation. *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). In Part I, Ms. Lucero established that, accepting the allegations in her complaint as true, Defendant Silberman violated her constitutional rights. As shown below, when Defendant Silberman violated Ms. Lucero's constitutional rights, her constitutional right not to be maliciously prosecuted based on a warrant secured through the knowing or intentional omission of exculpatory information was clearly established.

Ms. Lucero has pleaded that Defendant Silberman's omission of material facts from the affidavit he used to secure a warrant for her arrest were knowing and intentional, not merely reckless. ECF 23 ¶¶ 9, 83-91. As a result, the qualified immunity analysis is simple. "No one could doubt that the prohibition on falsification or omission of evidence, knowingly or with reckless disregard for the truth, was firmly established as of 1986, in the context of information supplied to support a warrant

---

[4] In *Rehberg*, the Supreme Court held that a grand jury witness has absolute immunity for his grand jury testimony. It reached this holding in large part based on "a special problem that would be created by allowing civil actions against grand jury witnesses – subversion of grand jury secrecy." 566 U.S. at 374. In rejecting the petitioner's argument that this holding would create an unfair distinction between states that require grand juries and those that permit criminal cases to be initiated by complaint, the Supreme Court stated in dicta, "The lower courts have held that witnesses at a preliminary hearing are protected by the same immunity accorded grand jury witnesses, and petitioner does not argue otherwise." (internal citations omitted). *Id.* at 375. As the Tenth Circuit's 1992 holding in *Anthony* demonstrates, the Supreme Court's musings about whether witnesses at preliminary hearings are accorded immunity – unaided by briefing from the *Rehberg* petitioner, *id.* at 375 – was inaccurate. Dicta based on a demonstrably inaccurate factual premise does not merit deference.
[5] Qualified immunity is a defense under 42 U.S.C. § 1983, but not under C.R.S. § 13-21-131. C.R.S. § 13-21-131(2)(b). Should the Court find that Ms. Lucero has properly pleaded her malicious prosecution claim against Defendant Silberman but that he is entitled to qualified immunity, her claim under C.R.S. § 13-21-131 would still proceed.

for arrest." *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004). In the context of an allegedly *reckless* omission of material facts, the Tenth Circuit requires that a plaintiff point to a case where a similar reckless omission was held unconstitutional to defeat a claim of qualified immunity. *Kapinski v. City of Albuquerque*, 964 F.3d 900, 910 (10th Cir. 2020). But in a case such as Ms. Lucero's where the allegation is of *intentional* or *knowing* omissions, the obviousness of the misconduct – cops can't knowingly leave out exculpatory information that would vitiate probable cause in order to get a warrant – obviates the need to point to a case with highly similar facts. *Pierce*, 359 F.3d at 1298-99 (citing *Hope v. Pelzer*, 536 U.S. 730 (2002)). As the Tenth Circuit holds, "no reasonably competent officer could believe an arrest legal where it was his deliberate . . . deception that led the magistrate into issuing the warrant." *Beard v. City of Northglenn*, 24 F.3d 110, 115 (10th Cir. 1994). "[D]isregard of the truth in an arrest affidavit [is] the ultimate act of unreason." *Id.* By knowingly and intentionally omitting material facts from his affidavit, Defendant Silberman violated clearly established law.

The facts of *Pierce* and *DeLoach v. Beavers*, 922 F.2d 618 (10th Cir. 1990) further establish that Defendant Silberman is not entitled to qualified immunity. In *Pierce*, the Tenth Circuit addressed a motion to dismiss a 42 U.S.C. § 1983 malicious prosecution claim where the plaintiff alleged that a law enforcement official learned obviously exculpatory information during her investigation, and "with knowledge and deceit," concealed that information. *Pierce*, 359 F.3d at 1282. This occurred both prior to the plaintiff's arrest and on an ongoing basis during the plaintiff's underlying criminal case. *Id.* at 1295-96. In 2004, The Tenth Circuit held that it was clearly established that such conduct was unconstitutional as early as 1986. *Id.* at 1298. The Court came to this conclusion in part because the Defendant's "alleged misconduct did not stem from a miscalculation of her constitutional duties, nor was it undertaken in furtherance of legitimate public purposes that went awry. Rather, as alleged, [Defendant] engaged in a deliberate attempt to ensure the prosecution and conviction of an innocent

14

man. Such conduct, if it can be proven at trial, violated [the Plaintiff's] constitutional rights with 'obvious clarity.'" *Id.* at 1299-1300. The same is true here.

In *DeLoach*, the Defendant detective prepared an affidavit seeking a warrant for the Plaintiff's arrest for murder based on the death of a small child that had been in the Plaintiff's care. 922 F.2d at 619. The Defendant detective knew based on an interview with a doctor who regularly consulted with and testified for the prosecution that it was much more likely that the blow that caused the child's death had been administered before the child came into the Plaintiff's care. *Id.* at 621. The Defendant detective did not make a report of this interview to avoid it being turned over in criminal discovery and did not include this fact in her affidavit seeking an arrest warrant. *Id.* When the Defendant detective testified at the preliminary hearing in the underlying criminal case, she "mischaracterized the substance of the interview . . . avoiding any exculpatory implications." *Id.* The Court found that "[t]he *Franks* rule applies to omissions as well as affirmative misstatements." *Id.* at 622. It further held that these facts were sufficient to sustain the jury's verdict that the Defendant detective's conduct was unconstitutional. "What [Defendant] did is totally unacceptable behavior for an investigative officer. Impelled by her own bias to slant the evidence, [Defendant] improperly hindered the others whom the law supposes will make impartial decisions – the district attorney and the magistrate – before [the Plaintiff] is required to undergo the ordeal of arrest and trial." *Id.* at 624. This is exactly what Defendant Silberman did to Ms. Lucero. At the time he violated Ms. Lucero's constitutional rights, it was clearly established that his conduct was unconstitutional.

## CONCLUSION

Wherefore, for the reasons stated herein, Ms. Lucero respectfully requests that this Honorable Court deny ECF 31, Defendant Silberman's Motion to dismiss.

Dated: August 11, 2023

*/s Adam Frank*
Adam Frank
Cameron Bedard
Frank Law Office LLC
1133 N Pennsylvania St.
Denver, CO 80203
Phone: (303) 800-8222
Fax: (303) 800-9122
adam@franklawoffice.com
cameron@franklawoffice.com
*Attorneys for Ms. Lucero*

Case No. 1:23-cv-00851-SKC-SBP    Document 42    filed 08/11/23    USDC Colorado    pg 17 of 18

**Certificate of Service**

   I hereby certify that on August 11, 2023, I electronically filed the foregoing with the Clerk of Court using the ECF system, which will electronically send notice to:

Eric M. Ziporin, eziporin@sgrllc.com
Jonathan N. Eddy, jeddy@sgrllc.com
Peter Morales, pmorales@auroragov.org
Gillian Fahlsing, gfahlsin@auroragov.org
Hollie Birkholz, hbirkhol@auroragov.org

*/s Adam Frank*
Adam Frank
Frank Law Office LLC

17