## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-00851-GPG-SBP

ELIZA LUCERO,

      Plaintiff,

v.

CITY OF AURORA and
ANDREW SILBERMAN, Aurora Police Department Detective, in his individual capacity,

      Defendants.

---

## ORDER GRANTING DEFENDANTS' MOTION TO STAY DISCOVERY AND DENYING DEFENDANTS' MOTION FOR PROTECTIVE ORDER

---

**Susan Prose, United States Magistrate Judge**

      This matter comes before this court on Defendants' Joint Motion to Stay Discovery and Vacate Scheduling Conference ("Motion" or "Motion to Stay"), filed July 25, 2023. ECF No. 36. The undersigned Magistrate Judge considers the Motion pursuant to 28 U.S.C. § 636(b)(1)(A) and the Memorandum dated August 25, 2023. ECF No. 45. This court has carefully considered the Motion and related briefing, the entire case file, and the applicable case law, and it has determined that oral argument would not materially assist in the disposition of the Motion. For the following reasons, this court **GRANTS** the Motion. Given this disposition of the Motion to Stay, Defendants' related Joint Motion for Protective Order from Undue Burden and Expense, ECF No. 38, is **DENIED AS MOOT**.

## BACKGROUND

      The action arises out of Plaintiff Eliza Lucero's arrest in connection with protest

activities in which she engaged on July 3, 2020, outside an Aurora, Colorado, police station. First Amended Complaint ("Compl."), ECF No. 23 ¶¶ 40-50. According to Ms. Lucero, Defendant Andrew Silberman, a detective with the Aurora Police Department, led the investigation of the July 3, 2020 incident. *Id.* ¶ 8. Mr. Silberman presented an affidavit in support of the arrest of Ms. Lucero, which she contends omitted salient facts and exculpatory information and contained "concocted charges." *Id.* ¶¶ 9-10, 107-116. Ms. Lucero further alleges that the manner of her arrest was calculated to "inflict[] the maximum amount of pain possible," *id.* ¶ 93, including unnecessarily exposing her to the COVID-19 virus in a Denver detention center when her charges arose out of Adams County. *See generally id.* ¶¶ 83-106. Ms. Lucero further asserts that Mr. Silberman perjured himself at a preliminary hearing in her case. *Id.* ¶¶ 117-121. A court ultimately found no probable cause for some of the charges that were brought against Ms. Lucero, and the prosecution subsequently dismissed the remaining charges. *Id.* ¶¶ 11-12, 125-127.

Based on these allegations, Ms. Lucero raises two claims in this lawsuit. The first is a Fourth Amendment claim against Mr. Silberman and the City of Aurora ("City"),[1] alleging malicious prosecution pursuant to 42 U.S.C. § 1983. *Id.* ¶¶ 159-168. The second is a malicious prosecution claim against Mr. Silberman under a Colorado statute, the Enhance Law Enforcement Integrity Act ("ELEIA"), Colo. Rev. Stat. § 13-21-131, which created a cause of action for individuals whose rights are secured by Article II of the Colorado Constitution (i.e.,

---

[1] Ms. Lucero's alleges that the basis for her *Monell* claim is that the City is "responsible for Detective Silberman's conduct because Aurora reviewed and approved it every step of the way." Compl. at 25 and ¶¶ 143-151.

the Colorado Constitution's Bill of Rights). *Id.* ¶¶ 152-158.

On July 24, 2023, Mr. Silberman and the City separately moved to dismiss all claims against them. ECF No. 31; ECF No. 34.[2] The motions to dismiss, which are fully briefed, *see* ECF Nos. 42, 43, 46, 47, are not referred to this court. Mr. Silberman argues that the claims against him should be dismissed because Ms. Lucero has failed to plausibly allege the elements of malicious prosecution, whether under Section 1983 or ELEIA. ECF No. 31 at 4-12. Mr. Silberman contends that, with regard to the Section 1983 claim, he is entitled to qualified immunity and, to the extent the claim implicates his testimony in a preliminary hearing, absolute immunity. *Id.* at 9-10, 12-13. Alternatively, if the district judge does not address "the plausibility of an underlying civil rights violation" in the court's eventual order on the motion to dismiss, Mr. Silberman argues that the court should decline to exercise supplemental jurisdiction over the ELEIA claim. *Id.* at 13 n.4. The City argues that the *Monell* claim should be dismissed because Ms. Lucero's allegations fall short of plausibly establishing an entitlement to relief. ECF No. 34 at 4-12.

On July 25, 2023, the day after Defendants filed their motions to dismiss, they filed the instant Motion to Stay, which seeks a stay of all discovery pending resolution of both motions to dismiss. ECF No. 36. Ms. Lucero has responded to the Motion to Stay, ECF No. 44 ("Resp."), and Defendants have filed a reply. ECF No. 48. Ms. Lucero urges that "[d]iscovery should . . .

---

[2] Ms. Lucero asserts that the motions would not "dispose of the lawsuit in its entirety," ECF No. 44 at 15 n.1, but it appears otherwise to the court, given that both Defendants argue that all claims against them should be dismissed. Ms. Lucero may mean to say that she believes the motions are unlikely to succeed. Regardless, the court construes the motions as collectively seeking a complete dismissal of the action.

proceed concerning *all* Defendants without further delay." Resp. at 5 (emphasis added).

Notwithstanding the pending Motion to Stay, Ms. Lucero seeks from Defendants initial

disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1) and demands responses to

written discovery requests she has issued—actions which prompted Defendants to file the

document entitled "Joint Motion for Protective Order from Undue Burden and Expense," ECF

No. 38 ("Motion for Protective Order"). Ms. Lucero's position is that "a motion to stay all

discovery does not create an automatic stay of discovery during the period of time between when

the motion is filed and when the court rules." Response, Motion for Protective Order, ECF No.

40 at 2 (discussing D.C.COLO.LCivR 30.2(a)). Defendants filed a reply in support of the Motion

for Protective Order. ECF No. 41. They argue *inter alia* that Ms. Lucero conflates the Motion to

Stay and Motion for Protective Order.

## LEGAL STANDARDS

While the Federal Rules of Civil Procedure do not expressly provide for a stay of

proceedings while a motion to dismiss is pending, Rule 26(c) does permit the court, upon a

showing of good cause, "to protect a party or person from annoyance, embarrassment,

oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). Further, "[t]he power to stay

proceedings is incidental to the power inherent in every court to control the disposition of the

causes on its docket with economy of time and effort for itself, for counsel, and for litigants.

How this can best be done calls for the exercise of judgment, which must weigh competing

interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936)

(citing *Kan. City S. Ry. Co. v. United States*, 282 U.S. 760, 763 (1931)).

While staying discovery pending a ruling on a motion to dismiss is generally disfavored

4

in this District, *see, e.g.*, *Chavez v. Young Am. Ins. Co.*, No. 06-cv-02419-PSF-BNB, 2007 WL 683973, at *2 (D. Colo. Mar. 2, 2007), this is not a hard and fast rule. "[G]ood cause may exist to stay discovery if a dispositive motion has been filed that could resolve the case and a stay does not unduly prejudice the opposing party," *Namoko v. Milgard Mfg., Inc.*, No. 06-cv-02031-WDM-MEH, 2007 WL 1063564, at *1 (D. Colo. Apr. 6, 2007). And certain questions— including questions of immunity and jurisdiction—should be resolved at the earliest stages of litigation and present compelling grounds for a stay. *See, e.g.*, *Behrens v. Pelletier*, 516 U.S. 299, 308, 310 (1996) (noting that discovery can be particularly disruptive when a dispositive motion regarding immunity is pending); *Moore v. Busby*, 92 F. App'x 699, 702 (10th Cir. 2004) (affirming trial court's stay of discovery pending resolution of absolute immunity question); *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995) ("[T]he Supreme Court has repeatedly 'stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" (citation omitted)); *Colorado Springs Fellowship Church v. Williams*, No. 19-cv-02024-WJM-KMT, 2020 WL 6487420, at *2 (D. Colo. Nov. 3, 2020) (same) (collecting cases); *Clarendon Nat'l Ins. Co. v. Glickauf*, No. 18-cv-02549-CMA-NYW, 2019 WL 1897845, at *2 (D. Colo. Feb. 14, 2019) (recognizing that courts in this District "may be more inclined to stay discovery pending the resolution of a Motion to Dismiss impacting immunity or jurisdictional issues"); *Gilbert v. United States Olympic Comm.*, No. 18-cv-00891-CMA-MEH, 2018 WL 11189646, at *3 (D. Colo. Nov. 27, 2018) ("issue of absolute immunity must be resolved before [defendant] bears the burdens of discovery").

In evaluating whether a stay is warranted, the court may also consider the plaintiff's interests in proceeding expeditiously with the civil action and the potential prejudice to the

plaintiff of a delay, the burden on the defendants, and the convenience to the court. *String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 1:02-cv-01934-LTB-PAC, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006). In the end, the decision to stay discovery rests firmly in the sound discretion of the trial court. *See Wang v. Hsu*, 919 F.2d 130, 130 (10th Cir. 1990).

## ANALYSIS

### I.    Mr. Silberman's Assertion of Absolute and Qualified Immunity

Mr. Silberman asserts that he is entitled qualified immunity as to Ms. Lucero's malicious prosecution claim under Section 1983 and that, insofar as that claim is based on testimony that he provided in a preliminary hearing, he is also entitled to absolute immunity. *See* Motion to Stay at 2. While these immunity protections are not dispositive of the *Monell* claim against the City or the state law claim against Mr. Silberman claim under ELEIA,[3] the court finds that Mr. Silberman's invocation of immunity warrants a complete stay of discovery until the district court rules on the pending motions to dismiss.[4] The court therefore begins by explaining its reasoning on this point.

---

[3] Qualified immunity is not a defense to liability under ELEIA. *See* Colo. Rev. Stat. § 13-21-131(2)(b).

[4] The court assumes that Mr. Silberman's and the City's separate motions will be decided simultaneously, but it is the resolution of Mr. Silberman's motion, which raises immunity defenses (that are intertwined with discovery generally), that is most pertinent to the court's evaluation of the stay question. *Cf. Boden v. Hmshost Corp.*, No. 15-cv-00606-CMA-KMT, 2015 WL 3826725, at *2 (D. Colo. June 19, 2015) ("Defendants do not maintain that the court lacks jurisdiction over Plaintiffs' claim or that they are entitled to immunity therefrom—rather it [sic] simply moves to dismiss Plaintiffs' Amended Complaint as time-barred pursuant to Rule 12(b)(6). Granting a stay under these circumstances would suggest that a stay of discovery is appropriate nearly any time a defendant files a motion to dismiss.").

"The Supreme Court has emphasized the broad protection absolute and qualified immunity affords, giving officials 'a right, not merely to avoid 'standing trial,' but also to avoid the burdens of such pretrial matters as discovery.'" *Lanier v. Sylvester*, No. 08-cv-00386-WYD-MEH, 2008 WL 2266287, at *1 (D. Colo. June 3, 2008) (staying discovery pending resolution of motion to dismiss raising absolute immunity defense) (quoting *Behrens*, 516 U.S. at 308). Immunity provisions, whether absolute or qualified, serve to spare officials from unwarranted liability as well as "demands customarily imposed upon those defending a long drawn out lawsuit," and are "effectively lost if a case is erroneously permitted to go to trial." *Siegert v. Gilley*, 500 U.S. 226, 232-33 (1991) (quoting in part *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). *See also Martin v. Cnty. of Santa Fe*, 626 F. App'x 736, 740 (10th Cir. 2015) (recognizing that, where qualified immunity is asserted, *"[e]ven such pretrial matters as discovery are to be avoided if possible, as inquiries of this kind can be peculiarly disruptive of effective government"*) (quoting *Jiron v. City of Lakewood*, 392 F.3d 410, 414 (10th Cir. 2004) (emphasis in original).

Qualified immunity, no less than absolute immunity, invokes the protection to be free from discovery: "Until this threshold immunity question is resolved, discovery *should not be allowed*." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (emphasis added); *see also Mitchell*, 472 U.S. at 526 (same). Indeed, "[t]he basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including 'avoidance of disruptive discovery.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009). In *Iqbal*, the Supreme Court made clear that discovery must be stayed upon assertion of qualified immunity, even if there are claims (or defendants) that are not subject to a qualified immunity defense; otherwise, the defense is lost:

> It is no answer to these concerns to say that discovery for petitioners can be deferred while pretrial proceedings continue for other defendants. It is quite likely that, when discovery as to the other parties proceeds, it would prove necessary for petitioners and their counsel to participate in the process to ensure the case does not develop in a misleading or slanted way that causes prejudice to their position. Even if petitioners are not yet themselves subject to discovery orders, then, they would not be free from the burdens of discovery.

*Id.* at 685-86.[5] Just so here. If discovery were to proceed only against the City on the *Monell* claim, for example, Mr. Silberman's alleged conduct would remain front and center. He will certainly be deposed and, as shown in the written discovery Ms. Lucero has already sought to propound, his actions will be the object of information specifically requested of the City. *See* ECF No. 36-1 at 9, 13-14 (reflecting at least one interrogatory and three requests for production of documents directed to the City but specifically concerning Silberman).

Ms. Lucero would have this court distinguish *Iqbal* because the Supreme Court there was addressing an "international security emergency." *See* Resp. at 6 (quoting *Iqbal*, 556 U.S. at 685). True enough, but nothing in *Iqbal* purports to confine the Supreme Court's analysis of qualified immunity, and the "avoidance of disruptive" discovery, to high-level government officials operating in the arena of national security. While "[t]he costs of diversion [from participating in discovery by persons raising qualified immunity]" are "*magnified*" in such a context, *id.* (emphasis added), the disruption attendant on discovery applies equally to every "Government official," including those whose daily work takes place in smaller realms:

---

[5] In light of this explicit language, this court respectfully disagrees with Ms. Lucero's assertion that "*Iqbal* never addresses the issue of whether a stay of discovery, if granted while a motion to dismiss based on qualified immunity is pending, should be extended to all defendants and claims in the case." Resp. at 7.

> If a Government official is to devote time to his or her duties, and to the formulation of sound and responsible policies, it is counterproductive to require the substantial diversion that is attendant to participating in litigation and making informed decisions as to how it should proceed. Litigation, though necessary to ensure that officials comply with the law, exacts heavy costs in terms of efficiency and expenditure of valuable time and resources that might otherwise be directed to the proper execution of the work of the Government.

*Id.* Nor do all of the Supreme Court cases predating *Iqbal*—which recognize that qualified immunity should be resolved at the "earliest possible stage in litigation" and that the "thrust of the qualified-immunity doctrine is to free officials from . . . 'disruptive discovery'" until threshold immunity questions are resolved—arise in the national security realm. *See, e.g.*, *Siegert*, 500 U.S. at 228 (qualified immunity defense raised by former supervisor who wrote defamatory letter about government clinical psychologist); *Pearson v. Callahan*, 555 U.S. 223, 227 (2009) (qualified immunity defense raised by state law enforcement officers who conducted warrantless search of house incident to an arrest for sale of methamphetamine); *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987) (holding, in evaluating qualified immunity defense raised by FBI agent who conducted warrantless search of home, that "on remand, it should first be determined whether the actions the Creightons allege Anderson to have taken are actions that a reasonable officer could have believed lawful. If they are, then Anderson *is entitled to dismissal prior to discovery*.") (emphasis added).[6]

---

[6] Neither does the court find it logical to adopt a rule revising the assessment of qualified immunity, with its associated protections, based on some perceived difference in the importance of the specific issue at stake or the titles of the persons raising the defense. After all, though promulgated only by a local government, the alleged City policy at issue here is claimed to have had grave consequences for Ms. Lucero. If she prevails, Mr. Silberman also will be deeply affected.

This court is not inclined to dismiss as mere "dicta" the Supreme Court's clear statements regarding discovery in the qualified immunity context, as Ms. Lucero urges. *See* Resp. at 6. But even if the language in *Iqbal* were properly characterized in that manner, this court would be "bound by Supreme Court dicta almost as firmly as by the Court's outright holdings, particularly when the dicta is recent and not enfeebled by later statements." *Indep. Inst. v. Williams*, 812 F.3d 787, 798 n.13 (10th Cir. 2016) (quoting *Gaylor v. United States*, 74 F.3d 214, 217 (10th Cir. 1996)). *See also United States v. Wing*, No. 16-cv-1219-WJM, 06-cr-226-WJM-1, 2016 WL 6803695, at *5 (D. Colo. Nov. 17, 2016) ("Supreme Court *dicta* binds this Court 'almost as firmly as . . . the Court's outright holdings'") (quoting *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1243 (10th Cir. 2008)).

This court discerns no justification for ignoring the clear language in *Iqbal*, and the Supreme Court precedent predating it, which directs that discovery should *not* proceed until threshold immunity questions are resolved even if not every claim or defendant raises an immunity defense. The court notes that *every* case on which Ms. Lucero argues for the contrary proposition either predates *Iqbal* or relies specifically on *Rome v. Romero*, 225 F.R.D. 640 (D. Colo. 2004), a case that itself predates *Iqbal* by some five years. *See* Resp. at 2-5, 7 n.2 (citing cases). Based on these cases, Ms. Lucero asserts that "*the District of Colorado* holds" that an assertion of qualified immunity by one defendant does not justify a limited stay of all discovery, *id.* at 1 (emphasis added), but this court respectfully finds that Ms. Lucero overstates her point.

Recently, the Chief Judge of this court rejected a plaintiff's "reliance on *Rome* and *Kaufman v. Univ. of Colo.*, No. 15-cv-00406-LTB-NYW, 2015 WL 4748987 (D. Colo. Aug. 12, 2015)"—another case on which Ms. Lucero heavily relies, *see* Resp. at 2-4, 6—as "unavailing."

*Cook v. Whyde*, No. 20-cv-02912-PAB-STV, 2021 WL 981308, at *2 (D. Colo. Mar. 15, 2021). In upholding the recommendation of Magistrate Judge Varholak to stay discovery where an individual defendant raised qualified immunity, but two defendants did not, the court emphasized that *Rome* and *Kaufman* did not compel a contrary result:

> While *Rome* states that asserting qualified immunity does [not][7] automatically bar all discovery, it provides little discussion of the sorts of prejudice concerns that are present here if discovery proceeds as to some but not all defendants. *Rome* also pre-dates *String Cheese* and is therefore less persuasive, given the importance of *String Cheese* to courts in this district. As to *Kaufman*, which relied on *Rome*, the court weighed the *String Cheese* factors and determined that a stay was not warranted.
>
> Moreover, both cases pre-date the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in which the Court considered a discovery stay when the issue of qualified immunity was raised. In *Iqbal*, the Court stated, "[t]he basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including avoidance of disruptive discovery." *Id.* at 685 (internal citation omitted).

*Id.* (further noting that *Iqbal* rejected the idea "that discovery for petitioners can be deferred while pretrial proceedings continue for other defendants," given that "[i]t is quite likely that, when discovery as to the other parties proceeds, it would prove necessary for petitioners and their counsel to participate in the process to ensure the case does not develop in a misleading or slanted way that causes prejudice to their position").

This court agrees with *Cook* and finds that it reflects a proper application of Supreme Court precedent on the immunity/discovery question. Neither the court in *Rome* nor the court in *String Cheese* was able to consider *Iqbal*, in which the Supreme Court recognized that the intertwined positions of multiple defendants can jeopardize the right to avoid discovery of an

---

[7] This word appears to have been omitted in the Westlaw version of the order in *Cook*.

individual defendant who asserts qualified immunity. Importantly, too, the court in *Rome* was forced to navigate the stay question in an unusual procedural posture: where an official delayed his assertion of qualified immunity until the summary judgment stage of the case. As the court in *Rome* observed: "Because the official controls when the issue is presented for adjudication, he cannot be said to be *unduly* burdened if he foregoes an opportunity to address the issue prior to the commencement of discovery, and instead waits to assert it until some point later in the litigation. In such circumstances, it may be appropriate to stay discovery only after the official presents the issue, and to require responses to existing discovery requests." 225 F.R.D. at 644 (emphasis in original).

Too, things have changed since *Iqbal*. As one court has put it in characterizing *Rome* as a "non-binding, pre-*Iqbal* decision[]":

> Before *Iqbal*, it was somewhat unsettled among courts whether and under what circumstances discovery should be stayed on the basis of a qualified immunity assertion. For instance, there was a long-standing question as to the proper scope of a discovery stay when only certain defendants were entitled to assert a qualified immunity defense and others were not. *See, e.g., Rome*, 225 F.R.D. at 644 (determining that discovery could proceed as to those defendants who could not assert qualified immunity). However, after *Iqbal*, the law is clear that discovery should be stayed upon assertion of qualified immunity, even for those defendants not asserting the defense. *Iqbal*, 556 U.S. at 685.

*Tenorio v. Pitzer*, No. CIV 12-1295 MCA/KBM, 2013 WL 12178001, at *3 (D.N.M. July 27, 2013).

In light of the directives by the Supreme Court in *Iqbal* and cases preceding it, that discovery be stayed upon the assertion of qualified immunity, this court concludes that Mr. Silberman is entitled to a determination of the questions of absolute and qualified immunity

before assuming the burdens of discovery and litigation. *Accord, e.g.*, *Jiron*, 392 F.3d at 414

(reasoning that because qualified immunity is an entitlement not to face the burdens of litigation,

"[e]ven pretrial matters such as discovery are to be avoided if possible"); *Workman v. Jordan*,

958 F.2d 332, 336 (10th Cir. 1992) (concluding that discovery "should not be allowed " until the

court makes a requested qualified immunity determination) (citing *Siegert*). In accordance with

*Iqbal*, the court finds that discovery here—discovery inextricably intertwined with Mr.

Silberman's alleged conduct, whether the claim is brought against Mr. Silberman personally or

the City—should be stayed. *See Iqbal*, 556 U.S. at 685-86.[8]

## II.      The *String Cheese* Analysis

The court's analysis can end here, but to ensure a thorough and careful review of the

issue from all angles, the court deems it appropriate also to address the *String Cheese* factors and

to explain why the balance of these factors also weighs in favor of a stay until Mr. Silberman's

motion to dismiss is resolved.

### A.      Plaintiff's Proposal for a "Modified" *String Cheese* Test

As an initial matter, the court considers Ms. Lucero's argument for a "modified" *String

Cheese* analysis, in which this court would take a "preliminary peek" at the merits of the pending

motions to dismiss and "consider the likelihood of success" of that dispositive motion. Resp. at

7-9. More specifically, Ms. Lucero urges that the "Court adopt an approach" that imposes on

---

[8] The court recognizes that questions regarding the court's jurisdiction, no less than immunity issues, may warrant a stay of discovery, *see, e.g.*, *Clarendon*, 2019 WL 1897845, at *2, but the only jurisdictional question here stems from Mr. Silberman's argument that the court should decline to exercise supplemental jurisdiction over the ELEIA claim *if* the claim is not resolved on other grounds. The court does not find that attenuated jurisdictional issue to be a persuasive basis for staying discovery.

Defendants—in particular, Mr. Silberman—the burden of showing that "there appears to be an immediate and clear possibility that [the motion to dismiss] will be granted." *Id.* at 9. The court respectfully declines Ms. Lucero's invitation to add an additional factor to the *String Cheese* analysis.

First and foremost, the court views such a merits review, even if limited to a "peek," an improper intrusion on the authority of the district judge, who has not referred the motions to dismiss to this court for a recommendation. *See Cook*, 2021 WL 981308, at *2 (concluding that "the magistrate judge need not assess the merits of defendants' dispositive motions" in conducting the *String Cheese* analysis, observing that "defendants' dispositive motions have not been referred to the magistrate judge for a recommendation, and the Court finds no clear error in Magistrate Judge Varholak's declining to conduct a merits analysis of motions not before him"). *See also Estate of Thakuri v. City of Westminster*, No. 19-cv-02412-DDD-KLM, 2019 WL 6828306, at *2 (D. Colo. Dec. 12, 2019) ("examining the merits . . . on a motion to stay discovery would essentially require adjudication of the dispositive motion at the same time, thus negating the entire purpose of the motion to stay and inappropriately usurping the District Judge's authority to determine the merits of the Motion to Dismiss"). While this court respectfully acknowledges that some judges on this court disagree, *see Love v. Grashorn*, No. 21-cv-02502-RM-NRN, 2022 WL 1642496, at *4 (D. Colo. May 24, 2022), other judges "have held that 'no element of the *String Cheese* factors requires that this court make a preliminary determination as to the likelihood of success of either the dispositive motion or the ultimate merits of this case.'" *Cook*, 2021 WL 981308, at *2  (quoting *Sexton v. City of Colo. Springs*, No. 20-cv-00108-PAB-KMT, 2020 WL 1875146, at *4 (D. Colo. Apr. 15, 2020) (quoting

14

*Sanchez v. City & Cnty. of Denver*, No. 19-cv-02437-DDD-NYW, 2020 WL 924607, at *5 n.3 (D. Colo. Feb. 26, 2020)). This court deems it appropriate to adopt this cautious approach and declines to conduct a merits review here.

In so doing, the court takes into account that, in recognizing that qualified immunity is intended to "free officials from the concerns of litigation, including 'avoidance of disruptive discovery,'" *Iqbal*, 556 U.S. at 685, the Supreme Court does not appear to have countenanced the idea that only those defendants who ultimately will prevail on their qualified immunity defense are entitled to be free of the burdens of pretrial discovery. Neither is this court aware of any suggestion by the Supreme Court that discovery may be avoided only by those defendants who succeed in demonstrating "an immediate and clear possibility" that a court will find them immune and grant their motion to dismiss. *See* Resp. at 9. Indeed, that idea is contrary to the fundamental structure for evaluating entitlement to qualified immunity which, once asserted, is only overcome when the *plaintiff* satisfies a "heavy two-part burden." *See, e.g.*, *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). This court declines to reframe the burdens established by the long-settled law regulating qualified immunity.

The court also questions both the propriety and feasibility of Ms. Lucero's proposal on a practical level. The merits of a qualified immunity defense are by no means susceptible to a facile assessment, nor should they necessarily be confined to Ms. Lucero's characterizations, as she would have the court do here. *See* Resp. at 14-15. What's more, a restricted "preliminary peek" at the substance of the arguments may yield more confusion than clarification. Without having examined the particular briefing on qualified immunity submitted by the parties here, this court nevertheless appreciates that a "preliminary peek" ought to take into account the "clearly

established law" prong of the analysis, which a plaintiff must meet to satisfy her heavy two-part burden. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (recognizing that, for the law to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate").

That analysis, done properly, might require a thorough review of many cases. Making the wrong call on a cursory look could improperly thrust a defendant entitled to qualified immunity into a contentious discovery process (a result antithetical to the protective aspects of the doctrine), but a plaintiff might equally suffer negative consequences from an erroneous call. A mistaken projection about how the district judge will rule, although attributable to a mere "preliminary peek," sets up a perceived dispute on this critical issue where none need exist and would at best be an inefficient use of judicial resources.[9] This court finds it preferable, and more consistent with the law governing qualified immunity, to focus on the established *String Cheese* factors—objective standards that do not depend on a referral judge's largely uninformed call about the merits of immunity defenses.

In sum, this court respectfully declines to employ the new criterion of a "preliminary peek" to the long-established five-factor *String Cheese* test.

### B.    Application of the *String Cheese* Factors

The court next evaluates the established *String Cheese* factors in light of the record here.

***Relative Burdens on the Parties (Factors 1 and 2).*** The court first acknowledges that

---

[9] The apparent assumption underlying Ms. Lucero's advocating for a "preliminary peek" is that the court would find Mr. Silberman has failed to demonstrate "an immediate and clear possibility" that he would prevail on his motion to dismiss, but that is a question this court need not address and will not attempt to decide here.

Ms. Lucero has a presumptive right to proceed expeditiously with her claims. *See, e.g.*, *Ashaheed v. Currington*, No. 17-cv-03002-WJM-SKC, 2019 WL 11690136, at *2 (D. Colo. Nov. 4, 2019). Here, however, Ms. Lucero has not identified specific prejudice that would result from a circumscribed stay allowing for a determination of the pending immunity questions in Mr. Silberman's motion to dismiss. Indeed, the timeline suggests that a stay would occasion no particular prejudice to Ms. Lucero. Although the precise date of her arrest is unclear from the complaint, the affidavit in support of the arrest warrant was attested to on September 15, 2020, ECF No. 31-4 at 33, and the preliminary hearing at which Mr. Silberman allegedly presented perjured testimony took place in March 2021. Compl. ¶¶ 117-123. Ms. Lucero then waited over two years, until April 2023, to initiate this lawsuit. Once the lawsuit was filed, Defendants promptly moved to dismiss, and briefing on those motions was quickly completed.

The court discerns nothing in this timeline—including no hint of potential spoliation or loss of evidence—that suggests a stay pending resolution of the motions to dismiss would interfere in any significant way with Ms. Lucero's ability to expeditiously pursue her rights in this case. The court perceives no particular risk of discovery being "diluted" here, as Ms. Lucero claims, *see* Resp. at 10, and given these circumstances, the court concludes that the burden on Mr. Silberman of proceeding with discovery in the face of his assertion of both qualified and absolute immunity tips the scale in favor of the complete stay of discovery contemplated in *Iqbal*.

To briefly recap the protections of absolute and qualified immunity discussed above, immunity defenses serve to spare government officials from the "demands customarily imposed upon those defending a long drawn out lawsuit," *Siegert*, 500 U.S. at 232, and immunity "is *an*

*entitlement not to* stand trial or *face the other burdens of litigation*." *Martin v. Cnty. of Santa Fe*, 626 F. App'x 736, 740 (10th Cir. 2015) (quoting *Jiron*, 392 F.3d at 414) (emphasis added). The court pauses here to emphasize that, contrary to Ms. Lucero's contention, nothing in the Supreme Court's articulation of these legal standards suggests that imposing a stay of discovery where qualified immunity has been asserted requires some showing of an "extraordinary or unique burden imposed by the discovery at issue." *See* Resp. at 11 (quoting *Wells v. Dish Network, LLC*, No. 11-cv-00269-CMA-KLM, 2011 WL 2516390, at *1 (D. Colo. June 22, 2011) (finding that a stay of discovery was not warranted in a case that did not raise immunity or jurisdictional issues). Rather, sufficient grounds for imposing a stay emerges from Mr. Silberman pointing to the burden of proceeding with discovery in the face of his assertion of qualified and absolute immunity.

In light of these considerations, and taking into account the law holding that avoiding discovery is a privilege afforded to those who raise immunity defenses, the court finds that requiring Mr. Silberman to participate in discovery would be contrary to these governing principles of law. On balance, then, the burden on Mr. Silberman of proceeding with discovery outweighs the burden on Ms. Lucero of a stay pending the resolution of the motions to dismiss. The court concludes that the first two *String Cheese* factors tilt in favor of a complete stay of discovery until the immunity questions are resolved. *See Iqbal*, 556 U.S. at 685-86 (rejecting view that it would be feasible for discovery to be deferred for one group of defendants "while pretrial proceedings continue for other defendants," and that "[e]ven if petitioners are not yet themselves subject to discovery orders, then, they would not be free from the burdens of discovery"); *Chapman v. Fed. Bureau of Prisons*, No. 15-cv-00279-WYD-KLM, 2015 WL

4574863, at *3 (D. Colo. July 30, 2015) (finding the second *String Cheese* factor weighed in favor of staying discovery, even though qualified immunity was only applicable as to some of the claims, because "it would be difficult for the parties and the Court to distinguish between discovery related to the claims that may be subject to qualified immunity and those that are not").

**Convenience to the Court (Factor 3).** As to the third *String Cheese* factor, it is certainly more convenient for the Court to stay discovery in the matter until it is clear which claims, if any, will proceed against which Defendant. Either of the pending motions to dismiss would dispose of the claims against the respective Defendants. "Where a pending motion may dispose of an action . . . a stay of proceedings may allow the Court to avoid expending resources in managing an action that ultimately will be dismissed." *Stone v. Vail Resorts Dev. Co.*, No. 09-cv-02081-WYD-KLM, 2010 WL 148278, at *3 (D. Colo. Jan. 7, 2010).

The court can readily discern from the record in this case to date that Ms. Lucero holds impassioned views about the strength of her claims, as is her right, and that Defendants intend to vigorously dispute her characterization of the matter, as is their right. But these passionately-held positions also portend a contentious discovery process in which this court may often be asked to intervene. Thus, a stay is likely to prevent wasting judicial time and resources in handling discovery disputes concerning claims and parties that may be dismissed from the lawsuit. Even if only a portion of the claims are dismissed, the scope of future discovery disputes will be significantly narrowed. *See, e.g.*, *Thakuri*, 2019 WL 6828306, at *3 ("In those circumstances, scheduling and discovery issues will not be raised until it is clear which claims and which Defendants will be moving forward in this case. It is certainly more efficient for the Court to

handle, for example, discovery issues after initial dispositive motions have been adjudicated.");

*Estate of George v. City of Rifle*, No. 20-cv-00522-CMA-GPG, 2020 WL 13825346, at *3 (D.

Colo. Nov. 6, 2020) (finding "that judicial economy is preserved by pausing discovery until it is

determined which claims, if any, have survived Defendants' motion to dismiss").

*Interests of Non-Parties and the Public*. With regard to the fourth factor, no non-parties

with significant, particularized interests in this case have been identified, favoring a stay.

Finally, as to the fifth factor, the public interest in general, the court has carefully

considered Ms. Lucero's contention that "the public has the right to know whether the

Defendants have engaged in the extensive, high-profile, and heinous misconduct" she alleges.

Resp. at 14. That may be so, but it is equally the case that the public has a right to know that this

court is endeavoring to carefully apply the law here and striving to ensure that the due process

rights of all litigants—including those accused of "heinous misconduct"—are protected, and that

they are not deprived of any legal safeguard which a neutral and dispassionate application of the

law requires. Here, the court has concluded that the law directs that Mr. Silberman not yet be

compelled to participate in discovery. And so, "while the public has an interest in the speedy

resolution of legal disputes . . . there is also a strong public policy behind the qualified immunity

doctrine. Among other things, this includes avoiding unnecessary expenditures of public and

private resources on litigation." *Carey v. Buitrago*, No. 19-cv-020703-RM-STV, 2019 WL

6215443, at *2 (D. Colo. Nov. 21, 2019) (internal citations and quotations marks omitted). Put

simply, the public interest would not be facilitated were this court to ignore the proper

application of this important legal principle.

"Overall, the public's interest in the efficient and just handling of legal disputes" is the

core consideration underlying the fifth factor. *Thakuri*, 2019 WL 6828306, at *3. *See also, e.g.*, *Thomas v. Rogers*, No. 19-cv-01612-RM-KMT, 2019 WL 5085045, at *3 (D. Colo. Oct. 10, 2019) (finding that the public's "primary interest" is in "an efficient and just resolution" of the case). This court finds that staying discovery promotes the efficient and just resolution of this matter, serves the ends of justice, and appropriately recognizes "[t]he *probability* that judicial resources will ultimately be conserved by addressing dispositive issues early in the litigation, and the *probability* that both judicial and attorney resources will be conserved by clarifying and resolving [the] disputed legal issue [of absolute and qualified immunity] at the earliest possible time. Overall, the public's interest in the efficient and just handling of legal disputes favors imposition of a stay in these circumstances." *Thakuri*, 2019 WL 6828306, at *3 (emphasis in original).

*        *        *

In sum, the court finds that balancing the *String Cheese* factors supports the conclusion that a stay of discovery pending the resolution of the motions to dismiss is warranted.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that:

(1) Defendant's Motion to Stay (ECF No. 36) is **GRANTED** and discovery in this matter is **STAYED** pending resolution of the Motions to Dismiss (ECF Nos. 31 and 34), and

(2) Defendants' Joint Motion for Protective Order from Undue Burden and Expense, ECF No. 38, is **DENIED AS MOOT**.

(3) Within three business days of the disposition of the pending Motions to Dismiss, to the extent there are any remaining claims, the parties **SHALL CONTACT** the chambers of this

Magistrate Judge to set a Scheduling Conference.[10]


DATED: September 13, 2023                    BY THE COURT:


                                             _____
                                             Susan Prose
                                             United States Magistrate Judge

---

[10] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after service of a Magistrate Judge's order or recommendation, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. §§ 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection will result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 782 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review, including when a "pro se litigant has not been informed of the time period for objecting and the consequences of failing to object").