IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No.: 1:23-cv-00851-SKC-SBP

ELIZA LUCERO,

     Plaintiff,

v.

CITY OF AURORA, and
ANDREW SILBERMAN, in his individual capacity,

     Defendants.

---

## ORDER RE: MOTIONS TO DISMISS (DKTS. 31 & 34)

---

Following the death of Elijah McClain in August 2019 while in the custody of Defendant City of Aurora ("Aurora") police officers, numerous public demonstrations erupted protesting his death and Aurora's response to it. Plaintiff Eliza Lucero organized or co-organized some of those protests, including one held nearly a year later on July 3, 2020, at the Aurora Police Department's (APD) District 1 Police Station (the "July 3 Protest"). At the July 3 Protest, hundreds or thousands of protesters encircled the District 1 Police Station building, they barred most of the building exits, and police officers remained inside the building rather than confronting the protesters.

After an investigation into the July 3 Protest, Defendant Andrew Silberman,

a APD detective, swore an arrest affidavit to a Colorado magistrate, which resulted in an arrest warrant issuing for Plaintiff on five charges—attempted 1st degree kidnapping (felony), two charges of inciting a riot (felonies), engaging in a riot (misdemeanor), and obstructing government operations (misdemeanor). APD officers then arrested Plaintiff. Following a two-day preliminary hearing, the magistrate dismissed the attempted 1st degree kidnapping charge (the only charge subject to the preliminary hearing) and the district attorney's office later dismissed the remaining charges. Plaintiff then brought this lawsuit against Defendants Aurora and Silberman.

The Amended Complaint ("AC") (Dkt. 23) alleges Silberman, individually, is liable for malicious prosecution of Plaintiff in violation of 42 U.S.C. § 1983 and the Fourth Amendment. It alleges Aurora is liable based on municipal liability under *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). Plaintiff further alleges Silberman is individually liable for malicious prosecution in violation of the Colorado Constitution and the Colorado Enhance Law Enforcement Integrity Act, Colo. Rev. Stat. § 13-21-131 (ELEIA).

The Defendants filed separate motions to dismiss. Dkt. 31 (Silberman MTD); Dkt. 34 (Aurora MTD). The Silberman MTD argues each claim fails under Federal Rule of Civil Procedure 12(b)(6) because Plaintiff alleges insufficient facts to

2

demonstrate a violation of her constitutional rights.[1] It further argues Silberman is entitled to qualified immunity on the Section 1983 claim. The Aurora MTD asserts the claim against Aurora fails under Rule 12(b)(6) for reasons similar to those Silberman raised and because the AC fails to allege sufficient facts demonstrating Aurora's municipal liability. *See Monell*, 436 U.S. at 691.

Plaintiff filed responses (Dkts. 42, 43) and Defendants filed replies (Dkts. 43, 47). Plaintiff also filed two Notices of Supplemental Authorities (Dkts. 51, 52). The Court has reviewed each of the MTDs, the related briefing, the docket, and the relevant law. No hearing is necessary. The Court has jurisdiction over Plaintiff's Section 1983 claim under 28 U.S.C. § 1331 and her ELEIA claim under 28 U.S.C. § 1367. For the following reasons, the Silberman MTD is granted in part and denied in part, and the Aurora MTD is denied.

## A. LEGAL PRINCIPLES

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010) (internal citations omitted). But the Court is not "bound to accept

---

[1] Silberman argues the Court should analyze the ELEIA claim by looking to Section 1983 claims asserting violations of the Fourth Amendment.

as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678 (cleaned up).

The *Twombly/Iqbal* pleading standard first requires the court to identify which allegations "are not entitled to the assumption of truth" because, for example, they state legal conclusions or merely recite the elements of a claim. *Id.* It next requires the court to assume the truth of the well-pleaded factual allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. In this analysis, courts "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). The standard is a liberal one, however, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

## B. FACTUAL BACKGROUND

### 1.    Silberman's Proffered Arrest Affidavit

As an initial matter, a dispute exists over whether the Court may consider

4

Exhibit D to the Silberman MTD. Dkt. 31-4. Silberman contends Exhibit D is his
Affidavit of Probable Cause for Arrest Warrant that he submitted to the magistrate
to secure Plaintiff's arrest warrant. Dkt. 31, p.4. He argues the Court may consider
it because he claims Plaintiff references it in the AC. *Id.* at p.4 n.1. Plaintiff, however,
disputes that Exhibit D reflects what was submitted with the arrest warrant
application because Exhibit D is not signed, and she claims "[Exhibit D] is not the
document referenced in the operative complaint that caused [Plaintiff's] arrest."
Dkt. 42, p.6. Silberman replies that Plaintiff fails to explain the significance of the
lack of a signature on Exhibit D, she included the same document in her initial
disclosures, and regardless, the Court can take judicial notice of it because it is part
of the public record of Plaintiff's criminal case—case no. 2020CR3148 in Adams
County ("Criminal Case"). Dkt. 47, p.1. The Court disagrees with Silberman.

The Court cannot take judicial notice of Exhibit D at this stage because
Plaintiff disputes its authenticity, she claims the unsigned exhibit is not what is
referenced in the AC, and Silberman has not demonstrated the unsigned exhibit is a
record from the Criminal Case. "[T]he district court may consider documents referred
to in the complaint if the documents are central to the plaintiff's claim and the parties
do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d
936, 941 (10th Cir. 2002) (citing *GFF Corp. v. Associated Wholesale Grocers, Inc.,* 130
F.3d 1381, 1384 (10th Cir.1997)). Plaintiff plainly states that the unsigned Exhibit D
is not what she refers to in her AC, which means the Court cannot consider it as a

5

document central to Plaintiff's claim or one referred to in the AC. *See* Dkt. 42, p.6. Further, Plaintiff points to the omitted signature to support her contention that the affidavit is "not the one that caused [Plaintiff's] arrest . . . ," and thus contests the authenticity of Exhibit D. *Id*. In this way, Plaintiff has explained the significance of the omitted signature to the claims she's alleged in the AC. Notably, Silberman fails to explain why the missing signature doesn't matter. And whether Plaintiff has disclosed Exhibit D in discovery has nominal probative value as to whether Exhibit D is the document referred to in the AC or one that meets the requisites for judicial notice.

While this Court may take judicial notice of matters from Plaintiff's Criminal Case, that case is sealed. *See Armstrong v. JPMorgan Chase Bank Nat'l Ass'n*, 633 F. App'x 909, 911 (10th Cir. 2015) (citation omitted) ("A court may consider facts subject to judicial notice–including facts that are a matter of public record, such as documents filed in other litigation–without converting a motion to dismiss into a motion for summary judgment."). The arrest affidavit in the Criminal Case is thus not publicly available for the Court to review.[2] The Court therefore ignores Exhibit D for purposes of the Silberman MTD.

---

[2] The Court attempted to search the Colorado state court records to locate the actual arrest affidavit but could not find the Criminal Case. Court staff contacted the court clerk's office in Adams County, who similarly could not find any record of the Criminal Case. The Court subsequently learned the Criminal Case was dismissed and sealed.

2.     **Factual Allegations of the Amended Complaint**

Taking the well-pleaded factual allegations as true for purposes of analyzing the MTDs, the Court discerns the following facts.

Plaintiff is "a committed activist and social justice leader . . . ." Dkt. 23, ¶2. Following the August 2019 death of Elijah McClain while in custody of Aurora police officers, she "began helping to organize demonstrations calling for transparency surrounding Mr. McClain's death." *Id.* at ¶¶1, 2; *see also id.* at ¶22. That fall, she and others led protesters at the Aurora Municipal Center and APD headquarters, and she spoke at an Aurora City Council meeting seeking, among other things, the removal of the APD officers involved in Mr. McClain's death and their criminal prosecution by the district attorney. *Id.* at ¶¶23-24, 27-28.

Following the death of George Floyd in Minneapolis, Minnesota, in May 2020, Plaintiff continued organizing protests to call attention to the death of Mr. McClain and seek action from Aurora and APD. *Id.* at ¶¶30-34. At one protest she partially organized that occurred on June 27, 2020, "Aurora officers clad in riot gear and armed with riot control weapons attacked this peaceful celebration of Mr. McClain's life. They shot pepper-balls and sprayed noxious chemical agents into peoples' faces from point blank range, injuring countless peaceful protestors who were lawfully assembled and posed no threat to public order." *Id.* at ¶37; *see also id.* at ¶¶34-36. The APD's actions at this protest resulted in national media coverage, at least some of which was negative towards Aurora and APD. *Id.* at ¶¶38-39. These events then

7

led to the July 3 Protest.

"On July 2, 2020, then-Chief of Police Vanessa Wilson announced that she had fired three Aurora officers who had photographed themselves reenacting and joking about the carotid hold their fellow officers had used in killing Mr. McClain." *Id.* at ¶40. But she refused to take action against the officers actually involved in Mr. McClain's death. *Id.* at ¶41. Therefore, Plaintiff "and her fellow protest leaders organized a demonstration for the next night." *Id.* at ¶42. "They took to social media, publicizing the demonstration demanding #JusticeforElijahMcClain. Their demands were clear: 'Time's up, APD! Fire Roedema, Rosenblatt, & Woodyard NOW!'"[3] *Id.*

"On the evening of July 3, 2020, several thousand protesters answered the call sent by [Plaintiff] and her fellow protest leaders. The assembled citizenry marched to APD's District 1 Police Station." *Id.* at ¶43. "Evidencing their commitment to nonviolent resistance, [Plaintiff] and her fellow protest leaders gathered the crowd outside of APD's District 1 Police Station and exhorted them to protest peacefully." *Id.* at ¶44. "Using megaphones, [Plaintiff] and her fellow protest leaders led chants calling on Aurora to fire the officers who murdered Elijah McClain." *Id.* at ¶45. Plaintiff "forcefully stated their demands while simultaneously working to keep the protest peaceful." *Id.* at ¶46. She "discouraged the building of barricades" and "was explicit that the protestors should not attempt to tie the doors of the police station."

---

[3] Roedema, Rosenblatt, and Woodyard were the APD officers involved in Mr. McClain's death while in APD custody.

*Id.* at ¶¶47, 48. She "told anyone who would listen that the protestors needed to be forceful in their demands yet peaceful in their actions." *Id.* at ¶50.

"[T]he protest proceeded peacefully outside of District 1. While a few people built barricades and put ropes around certain door handles, there was no violence and there was always an unblocked door for egress." *Id.* at ¶53. And Plaintiff "and her fellow protest leaders told the individuals taking these actions that building barricades and blocking doors was unhelpful and that they should stop." *Id.* at ¶54. "Even with some doors being blocked against [Plaintiff's] wishes for various periods of time during the protest, there was always a door to District 1 that was unlocked and unblocked. At any time during the protest, had any person inside District 1 chosen to leave the building, all the person would have had to do would have been to walk out of an unblocked, unlocked door." *Id.* at ¶55. "During this demonstration, then-Chief Wilson and her chain of command at APD ordered the APD officers in the station to stay inside the station" and "not to confront the protesters." *Id.* at ¶¶51, 52; *see also id.* at ¶79.

Following the July 3 Protest and the Aurora City Council's decision to independently investigate Mr. McClain's death, "APD resolved to go after the protest leaders" and "assembled a task force to investigate the leaders of the recent protests, including the one that occurred on July 3." *Id.* at ¶¶62, 63, 64; *see also id.* at ¶7. "Silberman was assigned to lead the portion of the investigation that sought charges against the leaders of the July 3, 2020 protest." *Id.* at ¶65. "Aurora gave Detective

9

Silberman an incredible quantity of resources, including hundreds if not thousands
of officer man-hours." *Id.* at ¶66. "Silberman's task force officers scoured countless
hours of surveillance and body camera video in search of any possible wrongdoing by
a protester they could use to make an arrest and tarnish the credibility of the protest
movement." *Id.* at ¶67. Upon learning Plaintiff was one of the leaders of the July 3
Protest, "Silberman [ ] set about trying to find any possible way to bring charges
against [her]." *Id.* at ¶69, 70.

"After months of effort by Detective Silberman and the other task force officers,
Detective Silberman wrote a 33-page single-spaced affidavit detailing the supposed
crimes [Plaintiff] committed on July 3, 2020. At the end of this affidavit, Detective
Silberman summarized the entirety of [Plaintiff's] conduct that he had uncovered:

> "a.    At 7:10 pm, [Plaintiff] walked with a group of protestors.
> "b.    At 7:42 pm, [Plaintiff] spoke to a group of protestors outside District 1.
> "c.    At 10:21 pm, [Plaintiff] brought pizza and put it down outside District 1.
> "d.    At some point, [Plaintiff] left the protest.
> "e.    At 1:49 am, [Plaintiff] returned to the protest and had changed from
> pants into shorts.
> "f.    At 2:30 am, [Plaintiff] stood outside a door to District 1 for
> approximately two minutes.
> "g.    At various points during the protest, [Plaintiff] led protest chants."

*Id.* at ¶73.

"In his preliminary hearing testimony [in the Criminal Case], Detective
Silberman confirmed that the actions listed [above] were the only actions by
[Plaintiff] that he had uncovered," and "none of these actions led to any violence." *Id.*
at ¶¶74, 75. He further testified "that he was aware that, at all times during the

10

protest at District 1, there was a door of District 1 that was unlocked and not physically barred in any way, such that anyone inside District 1 could have used that door to exit the building." *Id.* at ¶76; *see also id.* at ¶78. He "further learned that the officers inside District 1 had a large array of both lethal and non-lethal weaponry, as well as body armor to protect themselves." *Id.* at ¶82.

"At the time Detective Silberman wrote his affidavit, he knew based on his review of surveillance video that the officers inside District 1 could have left the District 1 building at any time through a door that was not locked and not physically barred." *Id.* at 85. And "he had direct personal knowledge from hearing the order and hearing of the order from other officers that the reason the Aurora officers inside District 1 stayed inside was because they had been ordered to remain inside." *Id.* at ¶87. But Silberman "knowingly left [these] fact[s] out of his affidavit." *Id.* at ¶¶86, 88. He "intentionally left these facts out of his affidavit seeking a warrant to mislead the reviewing judge and secure a warrant for [Plaintiff's] arrest, even though based on the facts he knew, there was not probable cause for the issuance of such a warrant." *Id.* at ¶91. Plaintiff further alleges the affidavit, "even as written, did not establish probable cause that [Plaintiff] had committed any crime . . . ." *Id.* at ¶107. A state judge issued the warrant for Plaintiff's arrest based on Silberman's warrant application and affidavit. *Id.* at ¶92.

"Detective Silberman and Aurora were aware that in addition to not being criminal, the actions Detective Silberman observed [Plaintiff] engage in . . . were

11

functionally identical to the actions of hundreds if not thousands of other protesters present at the District 1 protest." *Id.* at ¶104. Defendants "did not seek to arrest and initiate a prosecution of the hundreds if not thousands of other protestors who engaged in functionally identical conduct of [Plaintiff]," and instead focused on arresting "the people it believed had caused [their] misconduct to be brought into the light: the protest organizers . . . ." *Id.* at ¶¶105, 106.

Plaintiff's preliminary hearing in the Criminal Case was held on March 9 and 22, 2021. *Id.* at ¶¶110, 123. On the first day, Silberman testified he had not interviewed any witnesses, other than Aurora police officer Alcorta. *Id.* at ¶118. However, four days before the hearing, on March 5, "Chief Deputy District Attorney Tim Twining and Detective Silberman interviewed a witness who was present at the [July 3 Protest], Trey Quinn." *Id.* at ¶110. Mr. Quinn told Silberman at his interview that "the barricades that were created at the [July 3 Protest] were built by 'white anarchist' groups, not anyone associated with [Plaintiff]," Plaintiff "called on them to stop," Plaintiff "played no part in tying doors shut," and Plaintiff was "against the building of barricades." *Id.* at ¶¶111-14.

At the continued hearing on March 22, "[Plaintiff] presented Mr. Quinn's statements to the court . . . ." *Id.* at ¶124. "After learning of Mr. Quinn's statements and after considering the lack of evidence against [Plaintiff], the [c]ourt found that there was no probable cause to support the attempted kidnapping charge, the only charge that was the subject of the preliminary hearing." *Id.* at ¶125. "Further, the

preliminary hearing judge stated that in his opinion based on the evidence he had heard, there was not probable cause to support any of the charges against [Plaintiff] and the warrant should never have been issued." *Id.* at ¶126. "A short while later, the prosecution dismissed the remaining charges." *Id.* at ¶127.

Plaintiff further alleges Silberman's actions were reviewed and approved by Defendant City of Aurora. "After Detective Silberman completed his investigation into [Plaintiff] and had written a draft of his probable cause affidavit seeking a warrant for [Plaintiff's] arrest, he sent the affidavit to the higher-ups in Aurora's chain of command for review and approval." *Id.* at ¶143. Those "higher-ups" included "either then-Chief Wilson, acting in her capacity as the final policymaker for the City of Aurora concerning whether or how to proceed with a criminal case against [Plaintiff], or her designee . . . ." *Id.* at ¶144. And then-Chief Wilson or her designee knew the affidavit as written failed to establish probable cause. *Id.* at ¶¶145-49.

## C. ANALYSIS

### 1. Silberman's MTD

Silberman argues the AC should be dismissed because Plaintiff fails to allege facts sufficient to support her Section 1983 claim for malicious prosecution and her Colorado ELEIA claim. He further argues he enjoys qualified immunity for the Section 1983 claim.

#### a. Malicious Prosecution

In the Tenth Circuit, "a § 1983 malicious prosecution claim includes the

13

following elements: (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008). For purposes of malicious prosecution claims, "[m]alice is any motive other than a desire to bring an offender to justice" and "may be inferred from the want of probable cause." *Atencio v. Soopers*, No. 11-cv-02195-PAB-MEH, 2012 WL 6043602, at *7 (D. Colo. Dec. 5, 2012) (citing *Montgomery Ward & Co. v. Pherson*, 272 P.2d 643, 646 (Colo. 1954); *Barton v. City & Cnty. of Denver*, 432 F.Supp.2d 1178, 1208 (D. Colo. 2006)).

Silberman contends Plaintiff fails to allege sufficient facts to plausibly allege that no probable cause existed or that he acted with malice. Dkt. 31. He further argues that his failure to include the facts in his arrest warrant affidavit that at least one door remained unbarricaded and officers inside the building were ordered to remain there does not vitiate that probable cause. *Id.* The difficulty for Silberman is he supports these arguments by looking to Exhibit D, which the Court cannot consider. *See supra* Section B.1.

### i. Lack of Probable Cause

To the contrary, the AC alleges Silberman only included scant actions specific to Plaintiff in his affidavit—she spoke and marched with protesters, provided pizza to protesters, and led protest chants—and he testified at her preliminary hearing that

14

those actions were the only ones specific to her. *See* Dkt. 23, ¶¶73-75. For probable cause to exist, there must be "a substantial probability . . . that the suspect committed the crime, requiring something more than a bare suspicion." *Kapinski v. City of Albuquerque*, 964 F.3d 900, 907 (10th Cir. 2020) (quoting *Kerns v. Bader*, 663 F.3d 1173, 1188 (10th Cir. 2011)).

For the crimes with which Plaintiff was arrested and charged here, attempted first degree kidnapping requires a person to have taken a substantial step, with culpability, towards imprisoning or forcibly secreting someone in order "to force the victim or any other person to make any concession or give up anything of value in order to secure a release of a person under the offender's actual or apparent control." Colo. Rev. Stat. § 18-2-101, § 18-3-301(1)(c).[4] A person incites a riot by "[i]ncit[ing] or urg[ing] a group of five or more persons to engage in a current or impending riot; or [g]ives commands, instructions, or signals to a group of five or more persons in furtherance of a riot." *Id.* at § 18-9-102(1). A person violates Colo. Rev. Stat. § 18-9-104 if "she engages in a riot." And a person obstructs government operations if she "intentionally obstructs, impairs, or hinders the performance of a governmental function by a public servant, by using or threatening to use violence, force, or physical interference or obstacle." *Id.* at § 18-8-102(1).

Silberman argues the fact that a neutral magistrate issued the arrest warrant

---

[4] The parties agree that Plaintiff was arrested for violating Colorado Revised Statutes §§ 18-2-101, 18-3-301(1)(c), 18-9-102(a), (b), 18-9-104, and 18-8-102.

suggests he acted in "objective good faith." *See Messerschmidt v. Millender*, 565 U.S.
535, 546 (2012) (citation omitted). "Nonetheless, under [Supreme Court] precedents,
the fact that a neutral magistrate has issued a warrant authorizing the allegedly
unconstitutional search or seizure does not end the inquiry into objective
reasonableness. Rather, [the Supreme Court has] recognized an exception allowing
suit when 'it is obvious that no reasonably competent officer would have concluded
that a warrant should issue.'" *Id.* at 547 (quoting *Malley v. Briggs*, 475 U.S. 335, 341
(1986)). The situation here, as presented by the AC, meets this exception.

First, the AC plausibly alleges a lack of probable cause supporting the warrant
for Plaintiff's arrest. The AC alleges Silberman's affidavit recounted only that she
had walked and spoken with protesters, provided them pizza, changed her clothes,
stood briefly outside one of the police station doors, and led protest chants. Dkt. 23,
¶73. None of these allegations suggest she incited or participated in a riot, obstructed
a government function, or attempted first degree kidnapping. And the AC alleges the
protests and Plaintiff's speech "call[ed] for transparency surrounding Mr. McClain's
death" from Aurora and the APD. *Id.* at ¶2; *see also id.* at ¶¶42-53. She argues in her
Response this speech was protected by the First Amendment. Dkt. 42, pp.6-7. Taken
in the light most favorable to Plaintiff, her speech was protected First Amendment
speech criticizing Aurora and the APD.

Considering solely the allegations in the AC, as this Court must, the Court
finds no reasonably competent judicial officer would find probable cause when

considering Silberman's affidavit. To be sure, the AC alleges, "the preliminary hearing judge stated that in his opinion based on the evidence he had heard, there was not probable cause to support any of the charges against [Plaintiff] and the warrant should never have been issued." Dkt. 23, ¶126. Taken in the light most favorable to Plaintiff, this allegation affirms this Court's conclusion about the plausibility of Plaintiff's allegations regarding the lack of probable cause.[5]

Further, the AC makes numerous additional allegations that Plaintiff encouraged other protesters to protest peacefully and non-violently, and she discouraged and rejected the building of barricades and blocking doors. *Id.* at ¶¶44, 46-48, 50, 53-54. These allegations, when compared to the allegations of the resources at Silberman's disposal to investigate Plaintiff's conduct (*id.* at ¶¶66-67) further undercut the probable cause for Plaintiff's arrest on the charges brought against her.

Because the Court finds it may not consider Exhibit D and it is unable to review and take judicial notice of the actual arrest affidavit, the Court finds the AC alleges facts sufficient to plausibly allege the arrest affidavit lacked probable cause.[6]

---

[5] Even if the Court were to find probable cause existed for at least one of Plaintiff's charges, the outcome remains the same because lack of probable cause for one charge when probable cause exists for another can still result in liability for malicious prosecution. *See Chiaverini v. City of Napoleon*, 602 U.S. 556, 562 (2024).

[6] Because the Court finds Plaintiff plausibly alleged the lack of probable cause, the Court need not consider Silberman's *Franks* argument or whether the information he chose not to include in the affidavit vitiated probable cause.

17

ii.    **Malice**

The Court also finds the AC alleges sufficient facts that Silberman acted with malice. "While ordinarily a Fourth Amendment claim is measured by an objective reasonableness standard, the malice element of a Fourth Amendment malicious prosecution claim focuses on the defendant officer's knowledge or state of mind." *Mglej v. Gardner*, 974 F.3d 1151, 1171 n.14 (10th Cir. 2020) (citations omitted). Malice "may be inferred if a defendant causes the prosecution without arguable probable cause." *Id.* at 1171 (quoting *Stonecipher v. Valles*, 759 F.3d 1134, 1146 (10th Cir. 2014)).

Having found the AC plausibly alleges the lack of probable cause, Plaintiff has further plausibly alleged that Silberman acted with malice. Additional facts alleged in the AC further support this conclusion. For example, the AC alleges that Silberman "set about trying to find any possible way to bring charges against [Plaintiff]." Dkt. 23, ¶70. He knew of exculpatory information that the officers inside the police station stayed there because of an order from the Chief, and that a door remained unbarricaded and unblocked, and yet he omitted this information from his affidavit. *Id.* at ¶¶85-88. The AC alleges he "intentionally left these facts out of his affidavit seeking a warrant to mislead the reviewing judge and secure a warrant for [Plaintiff's] arrest, even though based on the facts he knew, there was not probable cause for the issuance of such a warrant." *Id.* at ¶91. At this stage, these allegations are sufficient to support the malice element of Plaintiff's claim.

18

b.    **Qualified Immunity**

Having resolved that the AC sufficiently pleads allegations to support
Plaintiff's malicious prosecution claim against Silberman, the Court must resolve his
claim of qualified immunity. As explained below, the Court finds he is not entitled to
qualified immunity at this time.

Qualified immunity shields individual defendants in Section 1983 actions
unless their conduct was unreasonable based on clearly established law. *Estate of
Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014). "[W]hen a defendant asserts
qualified immunity, the plaintiff carries a two-part burden to show: (1) that the
defendant's actions violated a federal constitutional or statutory right, and, if so,
(2) that the right was clearly established at the time of the defendant's unlawful
conduct." *Id.* (quotation omitted). The Court has discretion to consider these prongs
in any order. *Leverington v. City of Colo. Springs*, 643 F.3d 719, 732 (10th Cir. 2011).
Whether a defendant is entitled to qualified immunity is a legal question. *Wilder v.
Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

As to the first prong, "[i]f no constitutional right would have been violated were
the allegations established," the inquiry is at an end. *Saucier v. Katz*, 533 U.S. 194,
201 (2001). The second prong—whether the right was clearly established—must be
considered "in light of the specific context of the case, not as a broad general
proposition." *Id*. An official's conduct "violates clearly established law when, at the
time of the challenged conduct, 'the contours of a right are sufficiently clear' that

19

every 'reasonable official would have understood that what he is doing is violating

that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v.*

*Creighton*, 483 U.S. 635, 640 (1987)). To be clearly established, "existing precedent

must have placed the statutory or constitutional question beyond debate." *Id.*

Because the Court has found the AC plausibly alleges a claim for malicious

prosecution against Silberman, the Court considers the second prong of the qualified

immunity analysis. "To show that the law is clearly established, a plaintiff must

normally point to a 'Supreme Court or Tenth Circuit decision on point, or the clearly

established weight of authority from other courts.'" *Jordan v. Jenkins*, 73 F.4th 1162,

1168 (10th Cir. 2023), *cert. denied sub nom. Donnellon v. Jordan*, 144 S. Ct. 1343, 218

L. Ed. 2d 421 (2024) (quoting *Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th Cir.

2007)). "The degree of specificity required from prior case law depends in part on the

character of the challenged conduct. The more obviously egregious the conduct in

light of prevailing constitutional principles, the less specificity is required from prior

case law to clearly establish the violation." *Pierce v. Gilchrist*, 359 F.3d 1279, 1298

(10th Cir. 2004) (citations omitted). "In the rare obvious case, though, 'the

unlawfulness of the officer's conduct is sufficiently clear even though existing

precedent does not address similar circumstances.'" *Jordan*, 73 F.4th at 1168 (quoting

*McCoy v. Meyers*, 887 F.3d 1034, 1053 (10th Cir. 2018)).

At this motion-to-dismiss phase, the Court finds Plaintiff has alleged sufficient

facts to demonstrate her constitutional rights were clearly established at the time of

Silberman's swearing out of his arrest affidavit. Specifically, she alleges she was engaging in protected First Amendment speech criticizing Aurora and the APD and subjected to arrest in violation of her Fourth Amendment rights. Dkt. 47, pp.6-7. And according to the AC, the only actions specific to Plaintiff in Silberman's arrest affidavit were that she marched and spoke with protesters, provided pizza to protesters, and led protest chants. Dkt. 23 at ¶73.

As the Tenth Circuit has recognized, since at least 2018, "the First Amendment right to criticize police is well-established and it is clearly established that a government official may not base [his] probable cause determination on speech protected by the First Amendment." *Jordan*, 73 F.4th at 1170 (cleaned up) (citing *City of Houston v. Hill*, 482 U.S. 451, 461 (1987) and *Mink v. Knox*, 613 F.3d 995, 1003-04 (10th Cir. 2010)). And while First Amendment speech protections do not extend to physical interference with lawful police activity, the AC does not allege any such interference occurred. *See id.* at 1171.

Moreover, the right to be arrested only upon a showing of probable cause has also been clearly established for some time. *See Bickford v. Hensley*, 832 F. App'x 549, 555-56 (10th Cir. 2020) (citing *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002)) (An "officer violates an arrestee's clearly established Fourth Amendment right to be free of unreasonable seizure if the officer makes a warrantless arrest without probable cause."). The Court agrees with Plaintiff's argument. As the Tenth Circuit explained:

21

> Defendant's "alleged misconduct did not stem from a miscalculation of [his] constitutional duties, nor was it undertaken in furtherance of legitimate public purposes that went awry. Rather, as alleged, [he] engaged in a deliberate attempt to ensure the prosecution and conviction of an innocent [person]. Such conduct, if it can be proven at trial, violated [Defendant's] constitutional rights with 'obvious clarity.'"

*See Pierce*, 359 F.3d at 1299-1300.

Silberman argues in his Reply that Plaintiff is trying to amend her AC to include a speech-based claim. Dkt. 47, pp.1-2. But like the defendant in *Jordan*, Silberman misses the fact that a First Amendment violation can underpin a Fourth Amendment claim for malicious prosecution without being pleaded as a separate claim for relief. *See Jordan*, 73 F.4th at 1169 (Tenth Circuit authority "establish[es] that criticism directed at police is protected by the First Amendment and cannot justify adverse police action. Indeed, the First Amendment does not protect only quiet and respectful behavior towards police; it protects loud criticism that may annoy or distract the officer." (cleaned up)).[7] And as explained above, the Court cannot consider Silberman's arguments that rely on Exhibit D.

Thus, the Court finds that, at this juncture, Silberman is not entitled to qualified immunity. The AC plausibly alleges a violation of Plaintiff's constitutional rights to be free from an arrest for the exercise of her First Amendment rights and to

---

[7] The Court recognizes that Silberman and Plaintiff focused their arguments concerning whether the constitutional or statutory right was clearly established on the effect of Silberman allegedly withholding exculpatory information from his arrest affidavit. Nevertheless, Plaintiff also argued that Silberman's affidavit for her arrest resulted in her First Amendment rights being infringed. Dkt. 42, pp.6-7.

only be arrested upon a showing of probable cause. Both of these rights were clearly established at the time of Silberman's actions in this case.

### c.     Absolute Immunity for Silberman's Preliminary Hearing Testimony

Silberman also contends he is absolutely immune for his testimony provided at Plaintiff's preliminary hearing, at which Plaintiff contends he perjured himself. The Court agrees that Silberman is absolutely immune from civil liability arising from his testimony provided at Plaintiff's preliminary hearing in the Criminal Case. *See Handy v. City of Sheridan*, 636 F. App'x 728, 742 (10th Cir. 2016) (citing *Rehberg v. Paulk*, 566 U.S. 356, 370-75 (2012) ("In light of *Rehberg,* we must afford defendants [ ] absolute immunity for their preliminary-hearing testimony.").

It is not clear to the Court that Plaintiff's claim seeks liability against Silberman based on his hearing testimony. But to the extent it does, Silberman is absolutely immune from civil liability for the testimony he provided. His testimony, however, is nonetheless relevant to Plaintiff's claim.

### d.     ELEIA Claim

Silberman argues the Court should look to federal law to interpret ELEIA and Plaintiff apparently agrees. Dkt. 31, p.3; Dkt. 42, pp.4, 13 n.4. Indeed, Colorado courts look to Section 1983 to interpret ELEIA. *See, e.g., Woodall v. Godfrey*, 553 P.3d 249, 256 (Colo. App. 2024) ("While this is the first time we have addressed an excessive force claim brought under section 13-21-131, we are not without guidance.

Section 13-21-131 is similar to 42 U.S.C. § 1983 . . . . Accordingly, we may look to cases analyzing § 1983 claims . . . as persuasive authority."). For the reasons stated above regarding Plaintiff's Section 1983 claim, Plaintiff has plausibly alleged her ELEIA claim as well.

**2.    Aurora's MTD**

Aurora argues the Section 1983 claim brought against it should be dismissed because the AC fails to allege a constitutional violation occurred and it fails to allege sufficient facts demonstrating municipal liability. Because the Court finds above that a constitutional violation has been plausibly alleged, the Court need only analyze Aurora's argument regarding whether the AC alleges sufficient facts to establish municipal liability.

It is long-standing precedent that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676 (citing *Monell*, 436 U.S. at 691); *see also City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (A governmental entity "can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue.") (citing *Monell*, 436 U.S. at 694-95, 698); *Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998) ("It is well established . . . that a municipality cannot be held liable under section 1983 for the acts of an employee if [the] employee committed no constitutional violation."). "[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow

24

a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1188 (10th Cir. 2010) (internal quotation marks and citations omitted); *Schneider v. City of Grand Junction Police Dep' t*, 717 F.3d 760, 769 (10th Cir. 2013) ("[T]he Supreme Court require[s] a plaintiff to show that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury.").

To establish municipal liability under *Monell*, a plaintiff must show (1) a municipal employee committed a constitutional violation and (2) a municipal policy or custom was the moving force behind the violation. *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004). An official policy or custom under *Monell* may take several forms, including:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions–and the basis for them–of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (cleaned up).

Aurora argues Plaintiff fails to plead sufficient facts establishing it had an informal custom amounting to a widespread practice, that the custom caused the

deprivation of Plaintiff's constitutional rights, and that it did so with deliberate indifference resulting in an almost inevitable loss of those rights. In response, Plaintiff points to her allegations of Silberman's preliminary hearing testimony and the actions of the APD and then-Chief Wilson for support that Aurora had a policy of targeting the Elijah McClain protest leaders for arrest and prosecution, including utilizing illegal and unconstitutional means. The Court finds Plaintiff has carried her burden at this stage.

Aurora focuses on the solitary nature of its alleged policy, noting Plaintiff "has not made any plausible allegations of any similar prior incidents of task force creation which ultimately led to violations of people's rights, nor any other specific prior incidents where essential facts were omitted from probable cause statements that would vitiate probable cause." Dkt. 34, p.8. But this misses Plaintiff's allegation that Silberman testified Aurora, through APD, decided "to launch an investigation into the people who had brought awareness to APD's misconduct" regarding the death of Elijah McClain. Dkt. 23, ¶64. She further alleges that "APD resolved to go after the protest leaders." *Id.* at ¶62. And "APD assembled a task force with the explicit purpose of discrediting [Plaintiff] and her fellow protest leaders by concocting criminal charges against them." *Id.* at ¶7. Further, "Silberman and Aurora did not seek to arrest and initiate a prosecution of the hundreds if not thousands of other protestors who engaged in functionally identical conduct as [Plaintiff]." *Id.* at ¶105. "Instead, in following Aurora's policy and/or practice of targeting the leaders of the

protests . . . , Aurora focused its malicious prosecution on the people it believed had caused its misconduct to be brought into the light: the protest organizers, including [Plaintiff]." *Id.* at ¶106.

Plaintiff further alleges Silberman's arrest affidavit "was reviewed and approved by either then-Chief Wilson, acting in her capacity as the final policymaker for the City of Aurora concerning whether and how to proceed with a criminal case against [Plaintiff], or her designee . . ." acting in that same role. *Id.* at ¶144. And she alleges then-Chief Wilson or her designee "approved and thereby initiated the prosecution of [Plaintiff] despite knowing that the affidavit, even as written, did not establish probable cause to believe that [Plaintiff] had committed any crime." *Id.* at 149. "Aurora took these actions in compliance with the policy and/or practice . . . of going after the protest leaders who had dared shine a light on Aurora officers' misconduct by any means necessary." *Id.* at ¶150.

The Court is mindful that Plaintiff has not pleaded any other individuals who were impacted by the policy or practice she alleges. But the Court also recognizes that Silberman testified under oath that APD established a task force to investigate protest leaders, including Plaintiff, who had brought public focus to APD's alleged misdeeds. *See Sexton v. City of Colo. Springs*, 530 F. Supp. 3d 1044, 1070 (D. Colo. 2021) (quoting *Griego v. City of Albuquerque*, 100 F. Supp. 3d 1192, 1213 (D.N.M. 2015)) ("With informal, unwritten policies, customs, or practices, the plaintiff can plead . . . other evidence, such as a police officers' statements attesting to the policy's

existence."). As the court in *Griego* explained:

> The Court does not believe a pre-determined numerical pleading standard is best, nor does the Court think that pleading the facts of the plaintiff's individual case and adding the conclusion "policy, practice, or custom" suffice. The plaintiff must plead what he or she knows—whether it is a number of incidents or some other evidence—that renders plausible the plaintiff's conclusion that there is a policy, custom, or practice in place. If a police officer says there is a policy, that allegation may be enough to plausibly suggest that the policy exists, even if the plaintiff can plead only one specific instance of conduct. If a police officer says he or she was told to do something down at the stationhouse, that allegation, too, may be enough. The expectation is that the plaintiff must tell the Court at the outset, in the complaint, (i) why he or she thinks a policy exists—alleging specific facts; and (ii) what he or she thinks the policy is. The Court will then decide whether (i) plausibly suggests (ii).

*Griego*, 100 F. Supp. 3d at 1216. Taking Plaintiff's factual allegations as true, the Court finds Plaintiff has pleaded sufficient facts to plausibly allege Aurora had a policy of targeting the Elijah McClain protest leaders for arrest and prosecution, including utilizing illegal and unconstitutional means.

The Court further finds Plaintiff has adequately pleaded causation that she was arrested because of this alleged policy. And Aurora, through APD, acted with deliberate indifference because it allegedly created the policy in response to the Aurora City Council's decision to launch an independent investigation into the death of Elijah McClain. The Court therefore denies the Aurora MTD.

*     *     *

For the reasons shared above, Defendant Silberman's MTD (Dkt. 31) is GRANTED IN PART AND DENIED IN PART and Defendant City of Aurora's MTD

(Dkt. 34) is DENIED. The parties are FURTHER ORDERED to contact Magistrate Judge Susan Prose's chambers within 14 days to address the stay on discovery that she previously ordered. *See* Dkt. 49.

DATED: February 28, 2025.

BY THE COURT:

S. Kato Crews
United States District Judge